T.C. Memo. 2002-169


UNITED STATES TAX COURT


DAVID J. EDWARDS, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket No. 7010-00.                    Filed July 12, 2002.


<u>Noel W. Spaid</u>, for petitioner.

<u>Dale A. Zusi</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


BEGHE, <u>Judge</u>:  Respondent determined the following deficiencies in petitioner's Federal income taxes and associated penalties:

|              |            | Penalty      |
| TYE Dec. 31  | Deficiency | Sec. 6662(a) |
|--------------|------------|--------------|
| 1996         | $540,192   | $108,038     |
| 1997         | 511,866    | 102,373      |

After concessions by the parties, the issues for decision are:

1.  Whether petitioner failed to report $170,619 of income for 1996.  We hold he did.

2.  Whether petitioner is entitled to deduct any portion of the $278,365 that he claimed for 1996 on Schedule C, Profit or Loss From Business, and that respondent disallowed.  We hold he is not.

3.  Whether petitioner is entitled to deduct any airplane expenses on Schedules C of his 1996 and 1997 tax returns.  We hold  he is not.

4.  Whether petitioner is entitled to deduct any expenses of maintaining his personal residence as a trade or business under sections 162(a) and 280A.  We hold he is not.

5.  Whether petitioner is liable for penalties under section 6662(a)[1] for 1996 and 1997.  We hold he is.

6.  Whether sanctions under section 6673(a) should be imposed on petitioner or his counsel.  We hold that petitioner

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

should be penalized, and that respondent should submit an affidavit of costs for the Court's use in deciding whether and to what extent petitioner's counsel should be liable for respondent's excess costs and the amount of the penalty to be imposed on petitioner.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Clovis, California, when he filed the petition.

Petitioner is a medical doctor who has been practicing preventive medicine since 1961. During the years in issue, petitioner carried on his medical practice under the name Sunnyside Medical.

Petitioner also makes movies for use in his medical practice, provides religious and spiritual guidance to patients, markets music written by his father, and composes music. Petitioner also acts as a registered medical examiner for the Federal Aviation Administration. Petitioner did not track the receipts and expenditures of his spiritual, music, and movie-making activities separately from those of his medical practice.

During the years in issue, petitioner resided at 451 Burl Avenue, Clovis, California (Burl Avenue residence). Petitioner did not see patients at the Burl Avenue residence. However, he

made and received patient telephone calls at the Burl Avenue residence and prepared for meetings with patients. He also stored audio and video equipment at the Burl Avenue residence.

Petitioner's main medical office was at 360 South Clovis Avenue, Fresno, California (Fresno office). Petitioner also maintained medical offices in Merced, California, and Burbank, California.

Petitioner stored some of his film-making equipment at the Burl Avenue residence because he believed it was more secure than the studio where he had originally stored the equipment. Petitioner's film and music equipment was not inventory held for sale to customers in the ordinary course of business but was instead used by petitioner to make films and recordings.

In 1995, on the advice of Estate Preservation Services (EPS) operated by Robert L. Henkell (Henkell), petitioner transferred ownership of his medical practice, his movie and sound equipment, his airplane and other vehicles, his personal residence, and other assets to seven separate trusts. Attached as an appendix to this opinion are a diagram and a schedule prepared by EPS showing the ownership of petitioner's trust entities and the flow of funds among them. Petitioner's revocable trust held complete ownership of the "focus trust", which in turn held complete ownership of the remaining trusts. Petitioner retained direct or

indirect beneficial ownership of all trust assets. Petitioner also continued to exercise control over the trust assets after the transfers.

Although petitioner did not recognize or report any gain when he transferred his assets to these trusts, the trusts took depreciation deductions on the transferred assets based on their alleged fair market values at the time of transfer to the trusts (rather than on the original cost or depreciated basis in petitioner's hands).

In 1995, the Commissioner determined that Henkell and EPS were engaged in promoting illegal tax shelters designed to claim excessive and/or improper deductions and assessed penalties of $1,254,000 each against Henkell and EPS pursuant to section 6700.

In 1997, the Commissioner obtained from the U.S. District Court for the Eastern District of California an injunction preventing EPS and Henkell from rendering tax shelter advice. In United States v. Estate Pres. Servs., 202 F.3d 1093 (9th Cir. 2000), the Court of Appeals for the Ninth Circuit affirmed the injunction issued by the District Court, holding, among other things, that EPS and Henkell knowingly made false statements to taxpayers concerning the tax benefits of the trusts they promoted as tax shelters.

Petitioner filed Form 1040, U.S. Individual Income Tax Return, reporting $10,613 in taxable income for 1996 and $13,380

in taxable income for 1997.  These returns reported Federal income tax liabilities of $2,465 for 1996 and $4,497 for 1997.  Each of the trusts filed Forms 1041, U.S. Income Tax Return for Estates and Trusts, for tax years 1996 and 1997 reporting negative taxable income.[2]

Petitioner did not keep a general ledger accounting system.  Instead, petitioner's counsel admitted at trial that petitioner's records consisted of "just gross receipts, a massive amount of receipts, he does not keep journals and stuff like that".

On June 13, 1996, respondent sent a form letter to petitioner's current spouse, Jeanee Girazian, who at the time was living with and working for petitioner and was a named trustee of his trusts.  Respondent's letter stated that he had information that Ms. Girazian might be involved in trust arrangements used for tax avoidance purposes.  The letter cited substantial authority holding abusive trusts invalid and recommended that Ms. Girazian obtain independent advice regarding the validity of the trusts.

---

[2]Respondent issued notices of deficiency to the trusts disallowing all trust deductions.  The trusts failed to file petitions to the Tax Court within the 90-day period provided by sec. 6213(a).  Respondent thereupon assessed deficiencies against the trusts.  Respondent has agreed to hold in abeyance efforts to collect the assessed deficiencies from the trusts while the case at hand is pending.  In view of the agreement of the parties in the case at hand that the trusts should be disregarded for Federal income tax purposes since their inception, it is understood that the assessments against the trusts will be abated.

Respondent commenced an audit of petitioner's 1996 and 1997 tax returns after July 22, 1998. Respondent sent petitioner a letter requesting that he produce his records for examination. On January 21, 1999, respondent's examiner met petitioner and his adviser, Ilena Hamilton, at respondent's office.[3]

Petitioner began the meeting by stating that he would not provide any information concerning the trusts he had formed because he was under some unspecified duty not to disclose trust information. Petitioner told respondent's agent to obtain the trust information from the trustees. Petitioner refused to identify the trustees or to disclose how respondent could obtain the information.

Respondent then asked whether petitioner had brought any personal records to support his return. In response, petitioner read a lengthy prepared statement objecting that it was improper for respondent to audit more than 1 year's return at a time. He stated that he would not provide any records until respondent, in writing, answered certain questions, and even then he would produce only those documents that would not "violate my fourth amendment rights which guarantee the right to privacy of one's house, papers, effects and my fifth amendment right which guaranties that one cannot be compelled to be a witness against

---

[3]The meeting was taped, and a full transcript of the meeting was admitted into evidence.

oneself". Petitioner failed to specify how any of these privileges would apply to the financial records that formed the basis for his returns.

Petitioner demanded written answers to his questions before he would consider cooperating with respondent's examination. Petitioner demanded a written response stating: (1) The basis for respondent's examiner's authority to conduct the examination; (2) the statutory authority for the examination; (3) "you have to show us where 7006 gets its implementing implant, excuse me, implementing authority and if that implementing authority on 7602 is all inclusive to the outside of the definition"; and (4) whether respondent could establish that petitioner had income from one of the sources identified in section 1.861-8(f), Income Tax Regs.

At the meeting, respondent's examiner displayed her badge to establish her authority to conduct the examination and cited section 7602 to establish the statutory authority for the examination. Respondent's examiner advised petitioner both at the meeting and in a letter dated February 10, 1999, that: (1) Statutes are enforceable even if there are no regulations interpreting them, and (2) section 1.861-8(f), Income Tax Regs., is irrelevant to petitioner's returns and to the examination. Petitioner did not produce his records in response to

respondent's letter of February 10, 1999.  Petitioner's conduct constituted refusal to cooperate with respondent's examination.

On April 24, 1999, respondent issued a formal summons for petitioner's records.  On June 3, 1999, petitioner sent a letter to respondent making frivolous tax protester arguments by citing portions of statutes and court decisions entirely out of context and demanding that respondent answer a new set of frivolous questions.  Petitioner signed his letter "Without prejudice UCC 10207".  The letter evidences petitioner's continued refusal to cooperate with respondent's examination.

On June 12, 1999, petitioner and his counsel attended a meeting with respondent's examining agents.  Again, petitioner did not produce records in response to the summons and continued to make frivolous demands.

Because petitioner did not produce records to support his return positions, respondent elected to use an indirect method (the bank deposits method) to determine petitioner's tax liability.  On March 31, 2000, respondent issued a notice of deficiency to petitioner.  Respondent did not send a preliminary 30-day letter before issuing the notice of deficiency.  The period of limitations for making an assessment of petitioner's 1996 tax liability would have otherwise expired on April 15, 2000.

In the notice of deficiency, respondent determined that the trusts created by petitioner were shams with no economic substance and should be disregarded, or were grantor trusts all of whose income is taxable to petitioner. Respondent determined that petitioner's reported gross income should be increased by the gross income reported by the trusts ($560,184 for 1996 and $495,048 for 1997) and by unexplained deposits made to petitioner's bank account ($170,619 for 1996 and $131,190 for 1997) and to one of petitioner's trust bank accounts ($2,900 for 1996). Respondent disallowed all deductions claimed by petitioner and the trusts, because petitioner failed to provide substantiation for the deductions claimed on his returns ($574,430 for 1996 and $619,094 for 1997). Respondent made other computational adjustments to petitioner's returns resulting from the additional income respondent determined (such as determining that petitioner underreported self-employment taxes by $42,103 for 1996 and $39,443 for 1997). As a result of these adjustments, respondent determined deficiencies of $540,192 for 1996 and $511,866 for 1997.

Respondent also determined that petitioner is liable for 20-percent accuracy-related penalties under section 6662(a), because petitioner was negligent or disregarded rules and regulations in understating his taxable income, made substantial understatements of income tax, and had not shown reasonable cause for the

understatements. Applying the 20-percent rate to the deficiencies, respondent determined penalties of $108,038 for 1996 and $102,373 for 1997.

Petitioner timely filed an original petition and an amended petition with this Court. In his amended petition, petitioner argued that all adjustments respondent made were erroneous. Petitioner claimed his trusts were valid, and that the grantor trust rules do not apply because he held neither legal nor equitable title to the trust assets. Petitioner in his amended petition also asserted the "Delpit" issue: that the Tax Court lacks jurisdiction over his petition because respondent made the determination without sending him a 30-day letter, without advising him of his administrative rights, and without giving him an opportunity for adequate administrative review. According to petitioner's counsel: "This denial has cost Petitioner undue burden of Tax Court litigation that could have been resolved administratively."

The trial of this case occurred over 2 days, separated by more than 5 months. This delay was caused in large part by the failure of petitioner's counsel to organize in coherent fashion the exhibits she wished to include in the second of three stipulations of fact. The first and third stipulations of fact, prepared primarily by respondent, were filed with the Court at the beginning of the first day of trial; the second stipulation

of fact, prepared primarily by petitioner's counsel, was filed, subject to numerous objections to many exhibits by respondent on relevance, hearsay, authentication, or lack of foundation grounds, almost 4 months after the first day of trial.

Before trial, in petitioner's trial memorandum, and during the first day of trial, petitioner made two additional claims: That the statutory notice of deficiency was invalid because the wholesale disallowance of deductions amounted to a lack of determination, the "Scar" issue; and that the Internal Revenue Service is not an agency of the U.S. Government, the "Agency" issue.

At the beginning of the second day of trial, petitioner, through his counsel, made two oral motions:  (1) To shift the burden of proof to respondent under section 7491(a), claiming that petitioner had cooperated at all levels; and (2) for imposition of a penalty on respondent under section 6673(a)(1), on the ground that respondent, by not offering petitioner an Appeals Office conference prior to issuance of the statutory notice, had deprived petitioner of administrative remedies.

During both trial days, petitioner continued to claim that the trusts were valid for Federal income tax purposes.  The first day of trial dealt primarily with the validity of the trusts and events occurring during the audit.  These subjects were also covered during the second day of trial in the cross-examination

of the revenue agent who had examined petitioner's returns and direct testimony of petitioner. The second day of trial also covered petitioner's attempts to prove additional deductions using amended returns for petitioner and the trusts.

More than 3 months after the second day of trial, and shortly before posttrial briefs were originally due, respondent and petitioner entered into a superseding stipulation of settled issues that resolved many of the issues previously in dispute between the parties. The parties stipulated that the trusts were invalid for Federal income tax purposes, and that all the trust income and deductions should be allocated to petitioner. In addition, both petitioner and respondent made substantial concessions regarding the deficiencies. The following table shows the amount of Schedule C deductions and cost of goods sold originally claimed, the amount that respondent has agreed to allow, the disallowed amount that petitioner has conceded, and the amount that remains in dispute:

|  | 1996 | 1997 |
| --- | --- | --- |
| Claimed | $574,430 | $619,094 |
| Allowed | (280,195) | (426,551) |
| Disallowed | (15,870) | (192,543) |
| Disputed | 278,365 | --- |

The parties also stipulated that petitioner failed to report income of $62,061 in 1997, and that petitioner is entitled to deductions on Schedule A, Itemized Deductions, of $21,929 for 1996 and $21,061 for 1997, subject to any statutory limitations

based on petitioner's adjusted gross income.  The parties stipulated that petitioner is subject to self-employment tax and is entitled to a deduction for one-half of the self-employment tax and that the exemption and taxability of petitioner's Social Security receipts are computational and depend on petitioner's adjusted gross income.

Finally, the parties agreed that the only issues in dispute for the Court to decide are the first five issues discussed below.  In addition to those five issues, respondent requested in his posttrial brief that we impose penalties against petitioner under section 6673(a)(1).  Petitioner objected to the imposition of section 6673(a)(1) penalties, contending that his arguments were correct and requesting that we specifically address the "Delpit", "Scar", and "Agency" issues.

OPINION

Petitioner's Failure To Report $170,619 of Income in 1996

Section 6001 provides that "Every person liable for any tax imposed by this title, or the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe."  Section 1.6001-1(a), Income Tax Regs., requires any person required to file a return to "keep such permanent books of account or records, including inventories, as are

sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax".

Petitioner did not maintain any books of account for his medical practice or his other activities. Petitioner's counsel acknowledged that petitioner's records consisted of "just gross receipts, a massive amount of receipts, he does not keep journals and stuff like that". Petitioner did not offer any books of account into evidence.

Before filing the petition in this case, petitioner refused to produce any documents in response to respondent's informal and formal requests or to substantiate the income and deductions reported on his and his trusts' Federal income tax returns. Petitioner improperly refused to provide any documents related to his trusts. Petitioner refused to produce his personal return documents unless respondent provided acceptable (to him) written responses to his questions. Petitioner's questions were improper, and he had no right to require responses to them before producing documents. Even though respondent was under no obligation to do so, respondent provided clear written responses to petitioner's improper questions. Even after receiving the responses, petitioner failed to produce any documents to support his returns. Petitioner provided no support for his contention that he was under some privilege not to produce the trust

documents in his possession or under his control. We are aware of no such privilege. See Barmes v. Commissioner, 89 AFTR 2d 2249, 2250, 2002-1 USTC par. 50,312 at 83,742 (7th Cir. 2002) (taxpayer's argument that trust information was confidential or privileged held to be frivolous: "The Barmeses should count themselves fortunate that the Commissioner did not ask for additional sanctions in this court."), affg. T.C. Memo. 2001-155; SEC v. Bilzerian, 131 F. Supp. 2d 10, 16 n.8 (D.C. Cir. 2001) (expressing serious doubts about validity of trustee's confidentiality claims).

Because petitioner did not maintain proper books of account and wrongfully failed to produce records to substantiate his return positions, respondent used an indirect method of determining petitioner's taxable income. We have repeatedly upheld the use of an indirect method to determine taxable income where the taxpayer fails to maintain or produce sufficient records to establish the taxpayer's proper tax liability. For example, in Judy v. Commissioner, T.C. Memo. 1997-232, we stated:

> Every taxpayer is required to maintain sufficient records to enable the Commissioner to establish the amount of his taxable income. Sec. 6001; sec. 1.6001-1(a) and (b), Income Tax Regs. If such records are lacking, the Commissioner may reconstruct the taxpayer's income by any indirect method that is reasonable under the circumstances. Cebollero v. Commissioner, 967 F.2d 986, 989 (4th Cir. 1992), affg. T.C. Memo. 1990-618; Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989); Schellenbarg v. Commissioner, 31 T.C. 1269, 1277 (1959), affd. in part and revd. and remanded

in part on another issue 283 F.2d 871 (6th Cir. 1960).
* * *

Respondent used the bank deposits method to reconstruct petitioner's income. As we recognized in Zuckerman v. Commissioner, T.C. Memo. 1997-21:

> Use of the bank deposits method for reconstructing income is well established. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Under the bank deposits method there is a rebuttable presumption that all funds deposited to a taxpayer's bank account constitute taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); Haque Estate v. Commissioner, 132 F.2d 775, 777-778 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); DiLeo v. Commissioner, supra at 868. The Commissioner must take into account any nontaxable sources of deposits of which she is aware in determining the portion of the deposits that represent taxable income, but she is not required to trace deposits to their source. Petzoldt v. Commissioner, supra 695-696; Estate of Mason v. Commissioner, supra at 657.

The bank deposits analysis was quite complex by reason of the massive number of financial transfers petitioner made through his web of trusts and accounts. Petitioner made many transfers between accounts in his name, in the names of the eight trusts he created, and in the name of his current spouse, Jeanee Girazian. In order to avoid double counting income, it was necessary for respondent to exclude transfers made between accounts. Respondent introduced into evidence a detailed bank deposits analysis itemizing the specific deposits that respondent treated as constituting income to petitioner.

Once the Commissioner makes a prima facie case of unreported income using the bank deposits method and has made a determination in the notice of deficiency, the taxpayer bears the burden of proving that the deposits identified by the Commissioner as unreported income do not, in fact, represent unreported income.  Hardy v. Commissioner, 181 F.3d 1002, 1004-1005 (9th Cir. 1999) (if the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary or erroneous), affg. T.C. Memo. 1997-97; Clayton v. Commissioner, 102 T.C. 632 (1994); DiLeo v. Commissioner, 96 T.C. 858, 869 (1991) ("petitioners, not the Government, bear the burden of proving that respondent's determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect"), affd. 959 F.2d 16 (2d Cir. 1992); Beck v. Commissioner, T.C. Memo. 2001-270 ("Bank deposits are prima facie evidence of income.");[4]

---

[4]Petitioner moved at trial that respondent should bear the burden of proof under sec. 7491(a), under which the burden of proof is placed on respondent as to any factual issue for which petitioner offers credible evidence that is relevant to his liability for the income tax deficiencies if certain conditions have been satisfied.  According to the legislative history of sec. 7491:  "The taxpayer has the burden of proving that it meets each of these conditions, because they are necessary prerequisites to establishing that the burden of proof is on the Secretary."  S. Rept. 105-174, at 45 (1998), 1998-3 C.B. 537, 581.  Among other conditions, petitioner must show that he "has maintained all records required under this title and has

(continued...)

Kling v. Commissioner, T.C. Memo. 2001-78 ("Absent some explanation, a taxpayer's bank deposits represent taxable income. * * * The taxpayer has the burden of proving that the bank deposits came from a nontaxable source."). Respondent made a prima facie case by identifying deposits to petitioner's accounts. It was therefore incumbent upon petitioner to show a nontaxable source for the deposits.

Petitioner failed to offer credible evidence to show that any of the deposits respondent identified in his bank deposits analysis were from nontaxable sources. Petitioner's tax adviser, Catherine Carroll (Carroll),[5] offered into evidence the front of a check in the amount of $10,892.11. Carroll claimed that the check had been deposited to one of petitioner's accounts and had

---

[4](...continued)
cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(2)(B). Petitioner did not maintain proper books and records as required by the regulations and did not cooperate with respondent's reasonable requests for information and documents during the examination. Because petitioner did not satisfy the conditions of sec. 7491(a), he bears the burden of proof with respect to the income tax deficiencies respondent determined.

[5]Petitioner hired Carroll to provide forensic accounting services and expert testimony in connection with this case. She was not involved in the creation of petitioner's trusts nor in the preparation of petitioner's and the trusts' original Federal income tax returns. At trial, Carroll did submit on behalf of petitioner and the trusts amended Federal income tax returns. Because respondent claimed from the beginning, and petitioner has now conceded, that all trust items are taxable to petitioner, the trust returns and proposed amendments are nullities. Throughout this opinion we will refer to Carroll as petitioner's "tax adviser".

been double counted in respondent's bank deposits analysis. The check was not timely exchanged with respondent, and the back of the check was not offered into evidence. Without the back of the check, it was impossible to determine to which account the check had been deposited. Petitioner failed to establish that the check represents a deposit that was treated by respondent as coming from a taxable source.

Instead of providing evidence of a nontaxable source for the deposits respondent identified in his bank deposits analysis, Carroll attempted to offer an alternative bank deposits analysis. In preparing her bank deposits analysis, Carroll assumed that all income from a taxable source was deposited into the Medicine International Account or one of petitioner's J.G. Edwards accounts. Carroll testified that her assumption was based on assurances from petitioner. Carroll admitted that she could not specifically identify where the deposits came from.

In this case, we do not accept petitioner's unsworn, self-serving statements to Carroll, upon which she based her analysis, as credible. Petitioner intentionally created a confusing web of bank accounts in his own name, in the names of his eight trusts, and in the name of his current spouse, and engaged in numerous interaccount transfers. Petitioner failed to maintain a proper accounting system to keep track of these transactions and has been unable to explain with documentary evidence the sources of

the deposits respondent identified as taxable income. Under these circumstances, we do not accept Carroll's bank deposits analysis.

On brief, respondent states that his revised bank deposits analysis fixes petitioner's unreported income for 1996 as $54,516, rather than $170,619. We sustain respondent's concession to this effect.

## Petitioner's Right to Schedule C Deductions and Cost of Goods Sold in 1996 of $278,365

Because petitioner provided no documentation to substantiate deductions, respondent disallowed all deductions petitioner claimed. During discovery in this case, petitioner finally provided documentation to substantiate some of his business expense deductions. On the basis of the documentation petitioner provided during this case, respondent allowed $280,195 of the $574,430 in business expense deductions and cost of goods sold petitioner claimed for 1996 and $426,551 of the $619,094 in business expense deductions petitioner claimed for 1997. Petitioner conceded the balance he claimed for 1997 but has not conceded the balance claimed for 1996. We must therefore decide whether petitioner has substantiated any business expense deductions and cost of goods sold for 1996 in excess of the amount allowed by respondent.

Taxpayers who dispute the Commissioner's disallowance of deductions claimed on their returns must show they satisfied the

specific statutory requirements entitling them to the claimed deductions.  New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Davis v. Commissioner, 81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985).  While the Court may estimate the amount of allowable deductions where a taxpayer establishes his entitlement to, but not the amount of, the deductions, Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), any such estimate must have a reasonable evidentiary basis, Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without a reasonable evidentiary basis, the Court's allowance of deductions would amount to unguided largesse.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Respondent disallowed amounts claimed on petitioner's returns for cost of goods sold, car and truck expenses, commissions, and "other property lease".  In his posttrial brief, petitioner claimed $315,000 in alleged payments made to "Alpine Industries" as cost of goods sold and claimed deductions for $7,899 in "fiduciary fees", for $7,436 in car and truck expenses for travel between petitioner's Fresno and Merced offices, and for $11,500 in rent paid for petitioner's Burbank office.  On brief, petitioner did not cite any evidence in the record to substantiate these deductions.

The alleged "fiduciary fees" were not claimed on any return and were not listed by petitioner as a disputed item in the

stipulation of facts, and we were unable to find any reference at trial to these alleged fees. Petitioner's brief contains no citation of the record to support this claim.

Petitioner alleges on brief that $315,000 was paid to Alpine Industries for cost of goods sold. There is no evidence in the record to support petitioner's contention that he made payments of $315,000 to Alpine Industries. Indeed, petitioner's tax adviser, Carroll, testified that the cost of goods sold amount was based primarily on payments made from one of petitioner's bank accounts to another (which was held in the name of the "Claw trust"). Respondent conceded a deduction of $8,924 for amounts petitioner paid to Alpine Industries. Petitioner has not substantiated any portion of the balance of the amount claimed.

Petitioner states on brief that he should be allowed to deduct $7,436 in car expenses for his travel between his Fresno and Merced offices. Petitioner must meet the strict substantiation requirements of section 274(d) with respect to travel expenses. Except as otherwise provided in the regulations, section 274(d) requires the taxpayer to substantiate with adequate records or sufficient evidence corroborating his own statements: (1) The amount of the expense, (2) the time and place of the travel, and (3) the business purpose of the expense. Under the regulations, to meet the "adequate records" requirement of section 274(d), a taxpayer "shall maintain an account book,

diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure". Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985) (emphasis added).

Petitioner did not maintain a mileage log. Carroll testified that petitioner made one round trip between his Fresno and Merced offices every other Wednesday. Petitioner testified that the distance between his Fresno and Merced offices was 60 miles each way. Respondent allowed a deduction for 120 miles of travel per week at the statutory mileage rate of 31 cents per mile ($1,934.40 per year).

Petitioner failed to explain coherently the basis for the additional amounts claimed. Petitioner's testimony suggests the additional amounts claimed are an estimate of commuting expenses between his home and office. Commuting expenses are not deductible. See sec. 162; Fausner v. Commissioner, 413 U.S. 838 (1973); Heuer v. Commissioner, 32 T.C. 947, 951 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960); Reynolds v. Commissioner, T.C. Memo. 2000-20. Commuting expenses between a home office and another place of business are deductible if the home office is the taxpayer's principal place of business. Strohmaier v. Commissioner, 113 T.C. 106, 113-114 (1999); Curphey v. Commissioner, 73 T.C. 766, 777-78 (1980); Gosling v.

Commissioner, T.C. Memo. 1999-148.  Petitioner's residence was not his principal place of business.  Therefore, he is not entitled to deduct his commuting expenses.

Petitioner claims on brief, without any citation of the record, that the "other property lease" amounts represent rent paid to the landlord for the Burbank office.  Respondent allowed a deduction for all rent paid for use of the Burbank office.  It is apparent that petitioner has not shown what the $11,500 in claimed "other property lease" expenses was for.  Petitioner did not substantiate his "other property lease" claim.

Petitioner argues on brief that $1,848 should be allowed for repairs and maintenance.  Respondent already allowed this amount. Petitioner's presentation to the Court was so disorganized that petitioner apparently briefed an issue that is not in dispute.

Respondent has allowed deductions for all amounts petitioner substantiated.  Petitioner has presented no credible evidence to support the allowance of additional deductions.  We therefore uphold respondent's determination disallowing Schedule C deductions and cost of goods sold of $278,365.

## Airplane Expenses

Petitioner asks the Court to allow him a deduction for expenses relating to his airplane.  Petitioner did not claim deductions for airplane expenses on his return, nor did he seek allowance of deductions for airplane expenses in his petition to

this Court.  Petitioner made no motion to amend his petition and raised this issue for the first time at trial.  Respondent contends that we should not consider petitioner's request because petitioner failed to raise the issue in his petition.  "We have held on numerous occasions that we will not consider issues which have not been pleaded."  Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975); Brumley v. Commissioner, T.C. Memo. 1998-424.

Copies of petitioner's "flight log" were received in evidence, and we heard his testimony on the subject.  The issue was tried by consent, see Rule 41(b), and we will consider the issue on the merits.  For the reasons set forth below, we deny petitioner's belated claims for the deductibility of airplane expenses.

First, petitioner did not show the travel expenses were not incurred in commuting from his home.  Taxpayers cannot deduct commuting expenses even if the taxpayer's home is a long distance from his office.  In Commissioner v. Flowers, 326 U.S. 465, 473 (1946), the Supreme Court denied a deduction for travel expenses between the taxpayer's home in Jackson, Mississippi, and his office in Mobile, Alabama, stating:  "Whether he maintained one abode or two, whether he traveled three blocks or three hundred miles to work, the nature of these expenditures remained the

same."  See also United States v. Tauferner, 407 F.2d 243 (10th Cir. 1969); Smith v. Warren, 388 F.2d 671 (9th Cir. 1968); Bunevith v. Commissioner, 52 T.C. 837 (1969), affd. without published opinion 25 AFTR 2d 935, 70-1 USTC par. 9414 (1st Cir. 1970).

Petitioner offered conflicting testimony at trial as to whether his airplane was used for commuting.  At one point, he testified:  "I do go from the home office to the airport for transportation by plane to Burbank where my other office is and have a car at the airport in Burbank to link up with that airport and my office there."  He then attempted to change this testimony:  "I usually leave on a Friday afternoon from the medical office in Fresno and go to the Burbank office.  It's mainly office to office commuting."

After trial, petitioner attempted to clarify his testimony with a self-serving hearsay declaration submitted with his reply brief.  Petitioner states in the declaration that he never travels directly from his home to Burbank but instead always leaves from his Fresno office.  We decline to consider petitioner's declaration submitted after trial.  The statements are hearsay and untimely, and we do not find the statements in the declaration to be credible in light of petitioner's spontaneous trial testimony.

Second, petitioner's travel expenses are subject to the strict substantiation requirements of sections 274(d) and 280F(d)(4)(ii). Petitioner failed to substantiate the amount of his expenses or the time, place, and business purpose of his travel. Petitioner's "flight log" was not legible and did not contain the specific information required by section 274(d), such as the business purpose of each flight. Petitioner claimed that the airplane was used for travel to and from his Burbank office, for travel to business meetings (none of which were substantiated), and for maintaining his flying proficiency which he claims is "helpful", but not strictly required, for maintaining his status as a medical examiner for airline pilots. Petitioner's compliance with the strict substantiation requirements of section 274(d) is necessary in order to enable the Court to determine the percentage of business use and thus the allowable amount of petitioner's claimed deductions. See Noyce v. Commissioner, 97 T.C. 670 (1991) (treating flight training, personal use, and maintenance flights as nonbusiness use and allowing deduction only for business-use portion of expenses).

With respect to deductions other than depreciation, petitioner must establish that the expenditures were ordinary, necessary, and reasonable. Id. at 685; Marshall v. Commissioner, T.C. Memo. 1992-65. To establish that the expenses are ordinary,

petitioner must show that the expenses were of the type expected to be incurred in his business and were not personal expenses incurred for pleasure. See Noyce v. Commissioner, supra at 687; Marshall v. Commissioner, supra. Petitioner must also establish that the expenses were reasonable under the circumstances. This requires petitioner to establish that the expenses did not exceed the income earned or expected from the activity. See Noyce v. Commissioner, supra at 687-688. Petitioner failed to show that he generated a profit from having a Burbank office. In particular, he did not show that his Friday afternoon trips to Burbank were made for business and not personal purposes.

Petitioner has failed to establish his entitlement to the deductions for airplane expenses. Therefore, petitioner's request to deduct airplane expenses is denied.

Home Office Deduction

Petitioner seeks to deduct two-thirds of the expenses of maintaining his home (including his mortgage payments, both principal and interest, taxes, insurance, and utilities) as above-the-line business expenses under sections 162(a) and 280A. Petitioner has already been allowed an itemized deduction for mortgage interest and real estate taxes. The repayment of mortgage principal is, of course, not deductible. Commissioner v. Tufts, 461 U.S. 300, 307 (1983). Petitioner appears to be seeking a double deduction, which, of course, is not permissible.

Respondent objects to the Court's consideration of petitioner's request to deduct as business expenses two-thirds of the expenses incurred in maintaining his home, because petitioner did not assert the claim in his petition. Although petitioner did not properly plead this issue, it was tried by consent and we will decide it.

Petitioner has failed to establish his entitlement to deduct two-thirds of the costs of maintaining his home (or any portion of such costs). Under section 280A(c), no deduction is allowed for expenses relating to a dwelling unit used as a residence, unless a portion of the residence is "exclusively used on a regular basis" as either the "principal place of business * * * of the taxpayer" or "as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business". Petitioner did not use his home as his only place of business. He maintained business offices in Fresno, Merced, and Burbank.

In addition, petitioner failed to establish that his residence was his principal place of business. The location of the taxpayer's important or significant business activities is an important indicator of the principal place of business. In Commissioner v. Soliman, 506 U.S. 168 (1993), the Supreme Court held that an anesthesiologist's principal place of business was the hospital where he performed his medical services, not his

home office. See also Chong v. Commissioner, T.C. Memo. 1996-232 (rejecting argument by medical doctor that billing and collecting from patients constitutes a separate trade or business). Like the anesthesiologists in Soliman and Chong, petitioner does not see patients at his home office. Petitioner maintains separate medical offices at which he performs the most important functions of his medical practice. Petitioner's home office was not the principal place of business for his medical practice, or the place used by patients, clients, or customers in meeting or dealing with petitioner in the normal course of his trade or business.

Petitioner argues that his home is the principal place of business for his separate trade or business of making films and writing and selling music. However, petitioner did not establish how much time he spent or money he made on his film and music activities. Petitioner testified that any receipts from his film and music activities were commingled with those of his medical practice and could not be accounted for or determined separately. Any home-office deduction would be limited to the gross income derived from the business use of the residence. Sec. 280A(c)(5); Tobin v. Commissioner, T.C. Memo. 1999-328. Petitioner did not establish that the revenues from the use of his home would exceed his claimed deductions for mortgage interest and real estate taxes allocable to such use that were

allowed irrespective of whether the home was used for business.

Petitioner also failed to establish he conducted a separate trade or business of making films or of composing and selling music. Petitioner testified he produced no films in either 1996 or 1997, other than a few slide presentations in 1997 used in his medical practice. Petitioner also failed to establish that expenses relating to a separate trade or business of making films or composing and selling music would have been allowable under section 183 (which disallows losses from activities not engaged in for profit).

Finally, petitioner failed to establish that his proposed allocation of home expenses was appropriate. Petitioner's proposed allocation is based on an estimate of the portion of his home used to store his film and music equipment. A deduction for use of a home for storage of business property is allowed if the dwelling is the "sole fixed location of such trade or business" and is used as a "storage unit for the inventory or product samples" of the taxpayer's trade or business. Sec. 280A(c)(2); Banatwala v. Commissioner, T.C. Memo. 1992-483. Petitioner used his residence to store audio and video equipment used to make films and music, not inventory held for sale to customers or samples. Petitioner also failed to establish that his home is the sole location of his trade or business. We therefore deny petitioner's request to deduct two-thirds or any portion of the

expenses of maintaining his home as a trade or business expense under sections 162(a) and 280A because he failed to substantiate his entitlement to the claimed deductions.

Accuracy-Related Penalties Under Section 6662(a)

Section 6662(a) imposes a 20-percent penalty on the underpayment of tax attributable to, among other things, the taxpayer's "negligence", sec. 6662(b)(1), or "substantial understatement of income tax", sec. 6662(b)(2). Negligence is defined to include the "failure to make a reasonable attempt to comply" with the tax laws. Sec. 6662(c). A "substantial understatement" is an understatement for the taxable year exceeding the greater of 10 percent of the proper tax or $5,000. Sec. 6662(d)(1)(A).

Section 7491(c) imposes on respondent the burden of production of evidence that the section 6662(a) penalty is appropriate, but respondent need not produce evidence regarding reasonable cause. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioner reported Federal income tax liabilities of $2,465 for 1996 and $4,497 for 1997. On the basis of concessions made thereafter and this Court's rulings, petitioner's tax liability

will substantially exceed the amounts shown on his returns. Petitioner substantially understated his tax liabilities for 1996 and 1997.

Moreover, petitioner was negligent. He failed to maintain adequate records of his income and deductions, failed to substantiate many items claimed on his returns, artificially reduced his income through the use of sham trusts, and (as is discussed below in connection with the Court's consideration of section 6673(a) sanctions) maintained positions on his returns, in his petition, and through and after trial of this case that were frivolous.

Petitioner argues that no accuracy-related penalty should be imposed because he acted in good faith upon the advice of his tax advisers. We disagree. While section 6664(c)(1) provides for relief from penalties where the taxpayer shows good faith and reasonable cause for the understatement, mere reliance on advisers is not sufficient to establish good faith and reasonable cause. Sec. 1.6664-4(b)(1), Income Tax Regs. ("Reliance on * * * the advice of a professional tax advisor * * * does not necessarily demonstrate reasonable cause and good faith.").

Petitioner claims he reasonably relied on Henkell, the shelter promoter, in creating his trust shelters. Petitioner states that "there was no adverse information surrounding Robert Henkell and his extensive trust business at the time Dr. Edwards

relied on him and his advice, 1995. Robert Henkell before his IRS downfall, was a leader in the Trust business".

It is well established that taxpayers generally cannot "reasonably rely" on the professional advice of a tax shelter promoter. See Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994) ("Appellants cannot reasonably rely for professional advice on someone they know to be burdened with an inherent conflict of interest."), affg. T.C. Memo. 1993-480; Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 98 (2000) ("Reliance may be unreasonable when it is placed upon insiders, promoters, or their offering materials, or when the person relied upon has an inherent conflict of interest that the taxpayer knew or should have known about."); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991). Such reliance is especially unreasonable when the advice would seem to a reasonable person to be "too good to be true". Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; Elliott v. Commissioner, 90 T.C. 960, 974 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Gale v. Commissioner, T.C. Memo. 2002-54.

This is another case of "too good to be true". Petitioner could not reasonably have believed that he could transfer fully depreciated property to the trusts without recognizing gain and

thereby give the trusts a "stepped-up" basis upon which to take additional depreciation deductions. Nor could he have reasonably believed he could successfully use the trusts to come close to zeroing out his taxable income and his Federal income tax liabilities. At a minimum, advice to that effect would cause a reasonable person to seek independent confirmation from a reliable and disinterested adviser. Moreover, in the case at hand, petitioner continued to assert the validity of his trusts long after he learned of the invalidity of Henkell's trust schemes.

Petitioner also argues that respondent committed a "misdeed" by determining deficiencies substantially in excess of the amounts that ultimately will be redetermined, and that respondent's "misdeed" should mitigate petitioner's liability for penalties. Petitioner cites no authority for his argument. It is dead wrong and has no basis in fact or law. Petitioner failed to maintain and to produce to respondent, in response to respondent's proper requests, records to substantiate his income and expenses. Respondent did not commit a "misdeed" in reconstructing petitioner's income and disallowing his deductions after petitioner failed to produce proper records to support his return positions. We uphold respondent's determinations that petitioner is liable for accuracy-related penalties under section 6662(a).

Penalties Under Section 6673(a)

Section 6673(a)(1) allows the Tax Court to impose a penalty of up to $25,000, payable to the United States, when (A) a taxpayer institutes or maintains a proceeding primarily for delay, (B) the taxpayer's position in the proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies. Section 6673(a)(2) allows the Tax Court to require counsel who unreasonably and vexatiously multiply the proceedings before the Tax Court to pay the other party's excess costs, expenses, and attorney's fees.

Respondent has asked us to impose section 6673(a)(1) penalties against petitioner because he made frivolous or groundless arguments regarding: (1) The "Delpit" issue, (2) the "Scar" issue, (3) the "Agency" issue, and, until 12 days before posttrial briefs were due, (4) the abusive trust issue. In reply, petitioner argues these were all strong and proper legal arguments of first impression. In his reply brief, petitioner asks us to include in our opinion a detailed ruling on each of these issues. We consider each of these arguments--and petitioner's request--in deciding whether to impose section 6673(a)(1) sanctions against petitioner and section 6673(a)(2) sanctions against petitioner's counsel.

The "Delpit" Issue

Petitioner argued throughout the case, despite the Court's

admonitions that the argument was without merit as a matter of law, that the notice of deficiency should be invalidated because respondent failed to send a preliminary 30-day letter to petitioner, and failed to offer other administrative hearings, before issuing the notice of deficiency. Petitioner bases his argument on Delpit v. Commissioner, 18 F.3d 768 (9th Cir. 1994).

The issue in dispute in Delpit had nothing to do with the validity of a notice of deficiency. The issue in Delpit was whether an appeal from a decision of the Tax Court constitutes the "commencement or continuation * * * of a judicial, administrative, or other action or proceeding against the debtor" id. at 770, within the meaning the 11 U.S.C. sec. 362(a)(1), the automatic stay in bankruptcy. In dicta, the Court of Appeals in Delpit described the usual procedure in tax cases:

> Under the income tax assessment procedure, a taxpayer is barred from petitioning the Tax Court until he has first participated in a number of administrative proceedings that are initiated "against" him. These proceedings include an audit, a meeting with a revenue agent and a supervisor, a 30-day letter ("Preliminary Notice"), formal proceedings before the IRS Appeals Division, and a 90-day letter ("Notice of Deficiency"). These proceedings may continue with the taxpayer's request to the Tax Court to remove or reduce the deficiency assessment and, next, an appeal by one party or the other to the Court of Appeals. [Id.]

Petitioner asserts that the Court of Appeals' general description of ordinary tax procedure, in dicta, in Delpit, constitutes authority for invalidating the notice of deficiency

if the ordinary procedure is not followed. Petitioner cites no case, no statute, no regulation, and no other relevant authority to support his argument.[6]

The Internal Revenue Code and the regulations do not require the Commissioner to send a preliminary 30-day letter or to hold an administrative Appeals hearing before issuing a notice of deficiency. A 30-day letter and an opportunity for an Appeals hearing is a matter of administrative practice and procedure and not a requirement of law. It is hornbook law that "interpretive rules, general statements of policy or rules of agency organization, procedure or practice" are not binding upon an agency. Chrysler Corp. v. Brown, 441 U.S. 281, 313-314 (1979).

In making his argument, petitioner and his counsel fail to cite the long unbroken line of cases stretching back nearly 50 years rejecting petitioner's argument. For example, in a recent unpublished opinion in Greene v. Commissioner, 12 Fed. Appx. 606, 607 (9th Cir. 2001), affg. T.C. Memo. 2000-26, the Court of

---

[6]Petitioner, in his petition and brief, also cited In re Universal Life Church, Inc., 191 Bankr. 433 (Bankr., E.D. Cal. 1995); Lyng v. Payne, 476 U.S. 926 (1986); and Fano v. O'Neill, 806 F.2d 1262 (5th Cir. 1987), in support of his argument that the notice of deficiency is invalid because respondent failed to follow his administrative guidelines. We do not see, and petitioner made no effort to explain, the relevance of the Universal Life Church, Lyng, and Fano cases to his argument that the notice of deficiency respondent issued is invalid because respondent failed to provide petitioner with a preliminary 30-day notice or an opportunity for a hearing before an Appeals officer.

Appeals for the Ninth Circuit stated:

> We further reject Greene's contention that the Tax Court lacked jurisdiction over him because the IRS issued a notice of deficiency without first sending him a 30-day letter * * * or without conducting formal proceedings before the IRS Appeals Division. The Tax Court's jurisdiction does not depend upon any preliminary proceedings, but requires only issuance of a valid deficiency notice. See <u>Kantor v. Commissioner</u>, 998 F.2d 1514, 1521 (9th Cir. 1993). Because a taxpayer is entitled to a de novo proceeding in the Tax Court upon the filing of a timely petition for review, this court will not look behind a deficiency notice to question the procedures leading to a determination. <u>Id.</u>

See also <u>Smith v. United States</u>, 478 F.2d 398 (5th Cir. 1973) (30-day letter directory not mandatory, and therefore not required); <u>Rosenberg v. Commissioner</u>, 450 F.2d 529 (10th Cir. 1971) (failure to offer Appeals hearing directory, not mandatory), affg. T.C. Memo. 1970-201; <u>Luhring v. Glotzbach</u>, 304 F.2d 560, 563 (4th Cir. 1962) ("compliance with * * * [procedural rules] is not essential to the validity of a notice of deficiency."); <u>Bromberg v. Ingling</u>, 300 F.2d 859, 861 (9th Cir. 1962) ("The 30-day letter * * * invites the taxpayer to come in and see the commissioner and 'argue' with him if he wants to do so. But the taxpayer is not required to come. And the 30-day letter is not required by statute."); <u>Crowther v. Commissioner</u>, 269 F.2d 292, 293 (9th Cir. 1959) ("30-day letter (not required by law).") revg. and remanding 28 T.C. 1293 (1957); <u>Montgomery v. Commissioner</u>, 65 T.C. 511, 522 (1975) (30-day letter and administrative hearings are not required); <u>Greenberg's Express,</u>

<u>Inc. v. Commissioner</u>, 62 T.C. 324, 327-328 (1974) ("we will not look into respondent's alleged failure to issue a 30-day letter to the petitioners or to afford them a conference before the Appellate Division").

Lacking any legal authority to support his argument, petitioner argues that it would be unfair to require a taxpayer to exhaust his administrative remedies as a condition to being eligible to recover legal fees under section 7430 where the Commissioner fails to give the taxpayer the opportunity to pursue the administrative remedies.  This concern is easily disposed of by reviewing the language of section 7430.  Section 7430(b)(1) requires the taxpayer only to exhaust "the administrative remedies <u>available to such party within the Internal Revenue Service.</u>"  (Emphasis added.)  If the Commissioner does not provide an available administrative remedy, then the taxpayer's rights are not impaired by the failure to pursue that remedy.

In light of the overwhelming body of specific authority rejecting petitioner's argument, the lack of any legal support for petitioner's argument, and the lack of any genuine basis for seeking a change in the law, we hold that petitioner's "<u>Delpit</u>" argument is frivolous and groundless within the meaning of section 6673(a)(1)(B).[7]

---

[7]By a parity of reasoning, as well as the lack of a specific provision in sec. 6673(a)(1) for imposition of a penalty against
(continued...)

The "Scar" Issue

Petitioner argues that the notice of deficiency should be held invalid under the standard set forth in Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), revg. 81 T.C. 855 (1983), because respondent's determination in the notice of deficiency was not adequately explained, and because respondent disallowed all of petitioner's deductions without making a sufficient attempt to identify the deductions to which petitioner was entitled. Petitioner's and his counsel's misunderstanding of the Scar opinion is so obvious as to constitute willful "obtuseness". See Coleman v. Commissioner, 791 F.2d 68, 72 (7th Cir. 1986).

In Scar, the Commissioner issued the taxpayers a notice of deficiency adjusting income in the amount of $138,000 for "Partnership - Nevada Mining Project." The taxpayers had nothing to do with a Nevada mining project partnership. The Commissioner admitted that the notice of deficiency was issued in error but sought to proceed to collect other amounts not referenced in the notice of deficiency that the Commissioner claimed the taxpayers owed. Citing the general rule that courts do not look behind the notice of deficiency, the Tax Court held that the notice of

⁷(...continued)
the Commissioner, petitioner's motion for imposition of a penalty on respondent under sec. 6673(a)(1) will be denied.

deficiency was effective to confer on it jurisdiction to determine the correct deficiency owing by the taxpayer. Scar v. Commissioner, 81 T.C. at 861-862.

The Court of Appeals for the Ninth Circuit reversed, holding that a notice of deficiency is invalid if it shows on its face that no determination of tax owing by the taxpayer was made. The Court of Appeals stated:

> We agree with the Tax Court that no particular form is required for a valid notice of deficiency, and the Commissioner need not explain how the deficiencies were determined. * * * "The notice must at a minimum indicate that the IRS has determined the amount of the deficiency." The question confronting us is whether a form letter that asserts that a deficiency has been determined, which letter and its attachments make it patently obvious that no determination has in fact been made, satisfies the statutory mandate. [Scar v. Commissioner, 814 F.2d at 1367; fn. ref. and citations omitted.]

In Kantor v. Commissioner, 998 F.2d 1514, 1521-1522 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380, the Court of Appeals for the Ninth Circuit explained its Scar opinion and the limitation thereon announced in Clapp v. Commissioner, 875 F.2d 1396 (9th Cir. 1989), as follows:

> As a general rule, however, we will not "look behind a deficiency notice to question the Commissioner's motives and procedures leading to a determination." Id. at 1368.
>
> We recognized an exception to this rule in Scar, where the notice of deficiency revealed on its face that a determination had not been made using the taxpayer's return. * * *

We later emphasized in Clapp v. Commissioner, however, that the kind of review exercised in Scar is applicable "only where the notice of deficiency reveals on its face that the Commissioner failed to make a determination."  In Clapp, we determined that the notices of deficiency were adequate to establish jurisdiction where they indicated various adjustments to income and the fact that these adjustments were based upon the disallowance of deductions.  The taxpayers in Clapp attempted to show that the Commissioner had not made an actual determination of their deficiency by introducing internal IRS documents which suggested that at the time the notices were issued, the IRS had not decided which legal theory it would rely upon to secure a deficiency judgment.  We nevertheless refused to question the Commissioner's determination because there was no indication on the face of the notices that a determination had not been made.  The disallowed deductions did not refer to unrelated entities, nor had the tax rate been arbitrarily set.  [Emphasis added; citations omitted.]

See also Johnston v. Commissioner, T.C. Memo. 2000-315 ("the Court * * * has limited the application of Scar to the narrow circumstances where the notice of deficiency reveals on its face that no determination was made.").  In Meserve Drilling Partners v. Commissioner, 152 F.3d 1181 (9th Cir. 1998), affg. T.C. Memo. 1996-72, the Court of Appeals for the Ninth Circuit made clear that all the Commissioner must do is examine the taxpayer's returns and consider the taxpayer's deductions.  Recently, in an unpublished opinion, the Court of Appeals for the Ninth Circuit, in a case argued by petitioner's counsel, rejected petitioner's argument that Scar applies where, as in the case at hand, the notice of deficiency shows how the deficiency was computed.  Staggs v. Commissioner, 25 Fed. Appx. 566 (9th Cir. 2001).

Petitioner's contention that the notice of deficiency is invalid because respondent did not adequately explain the basis for his determination was specifically rejected in the Scar opinion itself: "the Commissioner need not explain how the deficiencies were determined." Scar v. Commissioner, 814 F.2d at 1367. Similarly, petitioner's contention that the blanket denial of deductions renders the notice of deficiency invalid was rejected by the Court of Appeals for the Ninth Circuit in both Clapp v. Commissioner, supra, and Kantor v. Commissioner, supra.

Petitioner does not allege that the notice of deficiency shows on its face that the determination relates to another person or that the tax rates were arbitrarily set. Petitioner's allegation that the notice of deficiency was erroneous or even arbitrary does not raise a proper challenge to its validity under Scar. Petitioner's counsel should have known after only a cursory reading of the cases that the Scar exception does not apply to the case at hand.

We also reject out of hand petitioner's unsupported argument that respondent acted improperly in disallowing all deductions in the notice of deficiency. Respondent made more than reasonable efforts to obtain from petitioner records to support the deductions that petitioner had claimed on his tax returns. Petitioner refused to produce documentation to support his deductions. He made unwarranted demands on respondent to reply

in writing to his frivolous and improper questions.

Petitioner's contention that Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), supports his argument is dead wrong. Petitioner's argument that the notice of deficiency is invalid because respondent did not make additional efforts to verify petitioner's claimed deductions after petitioner refused to substantiate them is frivolous and groundless within the meaning of section 6673(a)(1)(B).

The "Agency" Issue

Petitioner has devoted 3 pages of his 12-page reply brief to arguing that the Internal Revenue Service is not an "agency of the United States". Presumably, petitioner intends by this argument to suggest that respondent has no authority to determine or collect petitioner's income tax deficiencies.

In support of his argument, petitioner quotes a footnote from the Supreme Court's opinion in Chrysler Corp. v. Brown, 441 U.S. at 297 n.23 (1979), a single page of an answer to a complaint allegedly filed by the United States in an Idaho District Court case entitled Diversified Metal Prods., Inc. v. T-Bow Co. Trust, 78 AFTR 2d 5830, 96-2 USTC par. 50,437 (D. Idaho 1996), citing at note 3 Blackmar v. Guerre, 342 U.S. 512, 514 (1952).

Petitioner's argument is tax protester gibberish. It's bad enough when ignorant and gullible or disingenuous taxpayers utter

tax protester gibberish.  It's much more disturbing when a member of the bar offers tax protester gibberish as a substitute for legal argument.

The Internal Revenue Service is an agency of the United States Department of the Treasury.  Secs. 7801(a), 7803.  Section 7801 provides that "the administration and enforcement of this title shall be performed by or under the supervision of the Secretary of the Treasury."  Section 7803(a) provides for the appointment of a Commissioner of Internal Revenue under the Department of the Treasury.  Section 7803(a)(2) provides that the Commissioner of Internal Revenue shall, among other things, "administer, manage, conduct, direct, and supervise the execution and application of the internal revenue laws or related statutes and tax conventions to which the United States is a party".  Section 7804(a) authorizes the Commissioner to employ, supervise, and direct subordinate persons to administer and enforce the internal revenue laws.  These sections of the Internal Revenue Code dispel any notion that the Internal Revenue Service is not authorized to administer and enforce the internal revenue laws.

The Supreme Court recognized in Donaldson v. United States, 400 U.S. 517, 534 (1971), that "the Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of the Treasury under section 7801(a) of the 1954 Code for the administration and enforcement of the internal revenue

laws."  Courts have repeatedly rejected as frivolous the argument, advanced by petitioner in the case at hand, that the Internal Revenue Service is not a governmental agency.  In Young v. IRS, 596 F. Supp. 141, 147 (N.D. Ind. 1984), the court stated:

> it is clear that the Secretary of the Treasury has full authority to administer and enforce the Internal Revenue Code, 26 U.S.C. §7801, and has the power to create an agency to administer and enforce the laws. See 26 U.S.C. §7803(a).  Pursuant to this legislative grant of authority, the Secretary of the Treasury created the IRS.  26 C.F.R. §601.101.  The end result is that the IRS is a creature of "positive law" because it was created through congressionally mandated power. By plaintiff's own "positive law" premise, then, the IRS is a validly created governmental agency and not a "private corporation." * * *

In Salman v. Dept. of Treasury, 899 F. Supp. 471, 472 (D. Nev. 1995), the court stated:  "The court finds there is no basis in fact for Salman's contention that the IRS is not a government agency of the United States.  * * *  In short, Salman's action is wholly frivolous, and this court must dismiss it with prejudice." In Kay v. Summers, 86 AFTR 2d 7161, 7165, 2001-1 USTC par. 50,103, at 87,013 (D. Nev. 2000), the court held the plaintiff's contention "that the Internal Revenue Service is some sort of private corporation, not a government agency" to be frivolous. See also United States v. Fern, 696 F.2d 1269, 1273 (11th Cir. 1983) ("Clearly, the Internal Revenue Service is a 'department or agency' of the United States."); Thomson v. United States, 88 AFTR 2d 5620, 5621, 2001-2 USTC par. 50,614, at 89,521 (S.D. Fla.

2001) ("The Internal Revenue Service is a 'department or agency' of the United States.").

In Malone v. Commissioner, T.C. Memo. 1998-372, we imposed sanctions totaling $15,000 against the taxpayers for advancing frivolous arguments, including the argument that the Internal Revenue Service is not an agency of the United States:  "Contrary to petitioners' argument, there is, in fact and in law, an IRS." In Brandt v. Commissioner, T.C. Memo. 1993-411, we imposed section 6673 sanctions of $5,000 for meritless arguments disputing the Internal Revenue Service's authority.  Petitioner cited none of these authorities to the Court.

Furthermore, the authorities petitioner cited do not support his argument.  The issue in Chrysler Corp. v. Brown, 441 U.S. 281 (1979), was whether Chrysler could maintain an action to enjoin the Secretary of Labor from making public reports that Chrysler, as a Government contractor, was required to file to show compliance with Federal affirmative action guidelines.  One of the issues considered by the Court was whether disclosure was prohibited by the Trade Secrets Act, 18 U.S.C. sec. 1905.  The Court noted that the origins of the modern Trade Secrets Act could be traced to an 1864 act barring Government revenue officers from making unauthorized disclosure of a taxpayer's business information.  The Court noted that the 1864 Act was repealed in 1948.  In a footnote, the Court made a historical

reference to the difference between the manner in which revenue officers operated in the 19th century and the way they operate today:

> There was virtually no Washington bureaucracy created by the Act of July 1, 1862, ch. 119, 12 Stat. 432, the statute to which the present Internal Revenue Service can be traced. Researchers report that during the Civil War 85 percent of the operations of the Bureau of Internal Revenue were carried out in the field-- "including the assessing and collection of taxes, the handling of appeals, and punishment for frauds"-- and this balance of responsibility was not generally upset until the 20th century. L. Schmeckebier & F. Eble, The Bureau of Internal Revenue 8, 40-43 (1923). Agents had the power to enter any home or business establishment to look for taxable property and examine books of accounts. Information was collected and processed in the field. It is, therefore, not surprising to find that congressional comments during this period focused on potential abuses by agents in the field and not on breaches of confidentiality by a Washington-based bureaucracy. [Id. at 297 n.23.]

Petitioner's counsel quotes this footnote as support for her argument that the Internal Revenue Service is not a governmental agency. We are unable to discern how the footnote or the Chrysler Corp. opinion in any way supports petitioner's argument that the Internal Revenue Service is not an agency of the United States.

Petitioner next claims that in Diversified Metal Prods., Inc. v. T-Bow Co. Trust, 78 AFTR 2d 5830, 96-2 USTC par. 50,437 (D. Idaho 1996), the United States admitted that the Internal Revenue Service was not an agency, and the court based its decision on that admission. The issue in Diversified Metal was

whether the United States' tax lien had priority over other claims to funds held in the name of a third party.  The United States claimed the third party was the alter ego of the taxpayer/debtor, and that its tax lien therefore attached to the funds.  The court agreed with the United States.

Petitioner apparently relies on the following footnote in the Diversified Metal opinion to support his position:

> The Internal Revenue Service, and not the United States, was originally named as defendant in this action.  However, the United States is correct that the Internal Revenue Service has no capacity to sue or be sued.  Blackmar v. Guerre, 342 U.S. 512, 514, 96 L. Ed. 534, 72 S. Ct. 410 (1952).  Therefore, the United States is properly substituted for the Internal Revenue Service in this action.  [Id. at 5832 n.3, 96-2 USTC par. 50,437, at 85,462 n.3.[8]]

In Blackmar v. Guerre, 342 U.S. 512 (1952), a discharged employee of the Veterans Administration sued the United States Civil Service Commission for reinstatement.  The Court held that "Congress has not constituted the Commission a body corporate or authorized it to be sued eo nomine."  Id. at 514.  The Court also stated "When Congress authorizes one of its agencies to be sued eo nomine, it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity."  Id. at 515.  By citing Blackmar in support of its decision that the

---

[8]On brief, petitioner grossly mischaracterizes this footnote as "directing that the cause of action should be against the Commissioner of Internal Revenue personally since he is not responsible for the conduct of others claiming to act under his authority".

Internal Revenue Service could not be sued eo nomine, the District Court in <u>Diversified Metal</u> merely drew a parallel in that respect between the Internal Revenue Service and the United States Civil Service Commission. Nothing in the District Court's opinion supports petitioner's argument that the Internal Revenue Service is not an agency of the United States or that it lacks authority to administer and enforce the internal revenue laws.

In sum, the statutory authority of the Commissioner and the Internal Revenue Service is indisputable. The Courts have repeatedly held that the Internal Revenue Service is an authorized agency of the United States and rejected as frivolous arguments to the contrary. Petitioner cited no genuine authority for his position and failed to cite the substantial body of contrary authority directly on point. Finally, petitioner failed to make a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Petitioner's argument that the Internal Revenue Service is not an agency of the United States and is not authorized to administer and enforce the internal revenue laws is frivolous and groundless within the meaning of section 6673(a)(1)(B).

<u>The Abusive Trusts</u>

Petitioner conceded after trial and before the parties' posttrial briefs were due that the trusts should be disregarded for Federal income tax purposes. In his Federal income tax

returns for the years in issue and throughout the trial, however, petitioner continued to assert that the trusts were separate entities for Federal income tax purposes. Respondent contends that petitioner's position was frivolous, and that we should impose sanctions on petitioner under section 6673(a) for maintaining that position.

Petitioner argues that we should not impose sanctions because he maintained his position in good faith and in reliance on the promoter of the trusts, Henkell (who, petitioner claims, was a "leader in the trust business" and "master-trust maker of his time" before being fined and enjoined from providing trust advice in United States v. Estate Pres. Servs., 202 F.3d 1093 (9th Cir. 2000)).

The positions taken by petitioner before this Court were taken and continued long after Henkell had been fined and enjoined from further promoting his abusive trusts. Respondent provided petitioner with copious citations of our prior cases holding trusts like his to be invalid abusive trusts.

Moreover, as discussed above in connection with the accuracy-related penalties, reliance on the opinion of a shelter promoter regarding the validity of the shelter is, as a general matter, not reasonable reliance. Goldman v. Commissioner, 39 F.3d at 480; Neonatology Associates, P.A. v. Commissioner, 115 T.C. at 99; Marine v. Commissioner, 92 T.C. at 992-993. Such

reliance is especially unreasonable when the advice would seem to a reasonable person to be "too good to be true".  See e.g., Pasternak v. Commissioner, 990 F.2d at 903; Elliott v. Commissioner, 90 T.C. 960 (1998); Gale v. Commissioner, T.C. Memo. 2002-54.  A reasonable person would find Henkell's advice to be too good to be true.  At a minimum, such advice would cause a reasonable person to seek independent counsel.

At trial, petitioner sought to defend the trusts as established for asset protection purposes rather than tax avoidance.  However, petitioner's testimony concerning the asset protection benefits of the trusts was ill-conceived and legally erroneous.[9]  Even at the time of trial he had not thought through the asset protection benefits of using the trusts.

We did not find petitioner's alleged asset protection motivations to be credible.  Petitioner's argumentative demeanor while testifying at trial evidenced an intent to justify the creation of the trusts by diverting the Court's attention from his tax avoidance motives.

Petitioner redeemed himself to some extent, however, by conceding the issue before the parties' briefs were due. Petitioner's late concession is better than none at all.  We will

---

[9]For example, petitioner testified to his alleged understanding that he would avoid personal liability for causing an automobile accident if the vehicle he was driving had been transferred into a trust.

take petitioner's belated concession into account in setting any penalties that should be imposed.

### Section 6673(a)(1) Penalties Against Petitioner

We agree with respondent that petitioner should be penalized under section 6673(a)(1). Many of the positions he took when he instituted this proceeding, and maintained throughout this proceeding, were frivolous or groundless. Petitioner's "Delpit," "Scar," and "Agency" arguments were entirely without merit. Petitioner's insistence during most of the case on the validity of the trusts in the face of overwhelming contrary legal authority was unjustified.

We also believe that petitioner's failure, before the commencement of this case, to comply with respondent's requests for records (both his own records and the trusts' records, which he controlled), and the unreasonable demands he made on respondent for answers to clearly frivolous and improper questions, constitutes a failure to pursue available administrative remedies. Had he produced his records when requested by respondent, there would have been fewer disputed issues at the commencement of this case, and the trial would have been shorter and far better organized.

As a mitigating factor, petitioner made reasonable attempts to cooperate with respondent during the trial, resulting in stipulations to many of the issues originally in dispute.

Because the Court is raising sua sponte the question whether petitioner's counsel should be liable for costs under section 6673(a)(2), we will defer setting the penalties to be imposed on petitioner under section 6673(a)(1) until the parties have responded to the Court's inquiries into respondent's excess costs attributable to the conduct of petitioner and his counsel.

Section 6673(a)(2) Liability of Petitioner's Counsel

Originally, the tax law provided for an award of damages only against a taxpayer who instituted a case primarily for delay.  See Revenue Act of 1926, ch. 27, sec. 911, 44 Stat. (Part II) 109.  The damages provision was later adopted as section 6673 of the Internal Revenue Code of 1954.

In 1989, Congress added section 6673(a)(2) to provide for an award of costs, expenses, and attorneys' fees against an attorney where an attorney, including an attorney appearing on behalf of the Commissioner, has unreasonably and vexatiously multiplied the proceedings in any case.  Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7731(a), 103 Stat. 2400.  Section 6673(a)(2) is derived from sec. 1927 of the Judicial Code, 28 U.S.C. sec. 1927 (1988).  See H. Rept. 101-247, at 1399-1400 (1989).

In Harper v. Commissioner, 99 T.C. 533, 545 (1992), we noted the dearth of opinions interpreting and applying section 6673(a)(2), and relied upon caselaw under 28 U.S.C. sec. 1927 for

the level of misconduct justifying sanctions.  The language of 28

U.S.C. sec. 1927[10] is substantially identical to that of section

6673(a)(2), and the two statutes serve the same purposes in

different fora.  See Johnson v. Commissioner, 289 F.3d 452 (7th

Cir. 2002), affg. 116 T.C. 111 (2001); Harper v. Commissioner,

supra at 545.  The interpretation given section 6673(a)(2) and 28

U.S.C. sec. 1927 has historically been the same.

In Harper v. Commissioner, supra, we found that while most

Courts of Appeal require a finding of bad faith as a condition

for imposing sanctions under 28 U.S.C. sec. 1927, a few have

adopted the lesser standard of recklessness. Id. at 545-546.  The

Court of Appeals for the Ninth Circuit, the venue for an appeal

in the case at hand, has occasionally stated that sanctions under

28 U.S.C. sec. 1927 are appropriate where the attorney conduct

multiplying the proceedings was reckless.  B.K.B. v. Maui Police

Dept., 276 F.3d 1091, 1107 (9th Cir. 2002); Fink v. Gomez, 239

F.3d 989, 993 (9th Cir. 2001); United States v. Associated

Convalescent Enters., Inc., 766 F.2d 1342 (9th Cir. 1985).

Because we find petitioner's counsel's conduct satisfies the

condition for a finding of bad faith, as formulated by the Court

of Appeals for the Ninth Circuit, we need not decide whether

---

[10]28 U.S.C. sec. 1927 (1988) provides that "Any attorney
* * * who so multiplies the proceedings in any case unreasonably
and vexatiously may be required by the court to satisfy
personally the excess costs, expenses, and attorneys' fees
reasonably incurred because of such conduct."

recklessness, without more, would justify the imposition of sanctions under section 6673(a)(2).  See, e.g., Nis Family Trust v. Commissioner, 115 T.C. 523, 547 (2000); Dixon v. Commissioner, T.C. Memo. 2000-116.

In the view of the Court of Appeals for the Ninth Circuit, "bad faith" is present when an attorney knowingly or recklessly raises a frivolous argument.  In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996); Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir. 1986).  This is consistent with the notion that a member of the bar should be deemed to have the ability to recognize a frivolous argument when he or she encounters it.  While we have some doubt that Ms. Spaid intended to harass respondent, we have no doubt she knowingly and recklessly made frivolous arguments in pretrial memoranda, at trial, and in posttrial briefs.

All litigants, especially members of the bar who have received training in law and professional responsibility, are expected to read the cases cited for the Court, to assure that those cases remain current, and to advance only those legal arguments that are warranted by existing law, by nonfrivolous argument for its extension, modification, or reversal, or by the establishment of new law.  See, e.g., Fed. R. Civ. P. 11(b)(2); Coleman v. Commissioner, 791 F.2d 68, 72 (7th Cir. 1986) ("The purpose of sections 6673 and 6702, like the purpose of Rules 11

and 38 and of sec. 1927 [of 28 U.S.C.], is to induce litigants to conform their behavior to the governing rules regardless of their subjective beliefs. Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants. Once the legal system has resolved a claim, judges and lawyers must move on to other things. They cannot endlessly rehear stale arguments.").

Petitioner's counsel continued to advance the "Delpit", "Scar", and "Agency" issues long after being warned that the issues were frivolous and would not be considered by the Court. Petitioner's counsel persisted in raising these issues and requesting that we rule on them even after petitioner stipulated that they were no longer issues in the case. In making these arguments, petitioner's counsel cited no relevant supporting authority and either failed to perform the basic research to discover or failed to disclose the substantial body of authority specifically rejecting her arguments as frivolous.

We are mindful that there can be a thin line between zealous advocacy and frivolity. The Court must "avoid hindsight review of the claim, to resolve all doubts in favor of the signer and to refrain from imposing sanctions where such action would stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Greenhouse v. United States, 780 F. Supp. 136, 144 (S.D.N.Y. 1991) (discussing sanctions under Fed. R. Civ. P. 11).

We do not intend by our ruling to stifle the enthusiasm or chill the creativity of counsel for taxpayers in this Court. We simply expect petitioner's counsel to read the authorities she cites for us, to perform sufficient legal research to assure that her arguments are not bogus, and to explain the reasoning behind her arguments.

We recognize that petitioner originally appeared in this case by filing his petition pro se. Petitioner's counsel appeared on his behalf shortly after this case was set for trial. Some of the frivolous arguments that petitioner's counsel advanced during and after trial were originally contained in the petition, such as the "Delpit" issue and the validity of the trusts for Federal income tax purposes. Others were added after her appearance, such as the "Scar" and "Agency" issues. We, of course, should not and do not hold petitioner's counsel responsible for positions taken by petitioner before counsel's appearance. However, once counsel appears in the case, counsel has an obligation to proceed in accordance with the applicable rules of professional conduct. An attorney cannot advance frivolous arguments to this Court with impunity, even if those arguments were initially developed by the client. Petitioner's counsel is liable only for the results of her own improper conduct, and is not liable for actions taken by petitioner before her appearance in the case.

We therefore determine that it is appropriate for us to require petitioner's counsel, Noel W. Spaid, to pay personally such excess costs, expenses, and attorney's fees as have been reasonably incurred by respondent as a result of the matters identified above. Respondent will be ordered to submit an affidavit of such costs, expenses, and attorney's fees within 60 days for consideration by the Court. The affidavit should be itemized in sufficient detail to make clear how the time spent by respondent in each instance was causally related to the frivolous arguments or other sanctionable behavior of petitioner's counsel. Respondent's affidavit, in a separate section, should identify any action or nonaction by petitioner and his counsel which, even though not a ground for increasing the penalty to be imposed on petitioner's counsel, imposed additional costs, expenses, and attorney's fees on respondent.

Petitioner and his counsel will be permitted to file objection or objections to respondent's affidavit within 30 calendar days after the affidavit is filed.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.

APPENDIX

# David Edwards, M.D.



# FINANCIAL FLOW OF COMMON- LAW TRUST SYSTEMS
## IRREVOCABLE, DISCRETIONARY, COMPLEX TRUSTS
## TRUST INCOME & EXPENSE FLOW
## DAVID EDWARDS, M.D.

| | CLAW, SCOTT, SIERRA, MALPASO | CLAW | LAP | | TAKE FIVE | SOL |
|---|---|---|---|---|---|---|
| Trust Function | Upstreaming Trust-Equipment. (Automobile) | Upstreaming Trust-Service & Supplies | Personal Residence Trust | Investment Trust | Other Real Estate Trust | Focus Trust |
| Income | Rent or Lease Contracts w/ business | Payments for services or supplies Accounts Receivables | Rent from other Trusts, Corporations, Tenants, or Businesses | Sale Proceeds Interest Dividends | Rest or Lease Sale proceeds | K-1 Dividends from other Trusts, |
| Expenses | Lease or Contract payments. Expenses to maintain equipment Gas Supplies Repairs Rent to other trusts Dividend to Focus Trust | Purchase of supplies, Account Receivables, Inventory at standard, resell at Profit Dividend to Focus Trust | Normal Mortgage Taxes Maintenance Insurance Supplies Depreciation Repairs Utilities Add ons Improvements Furniture Dividend to Focus Trust<br><br>Abnormal T.V. Newspaper Phone | Purchase of Investments Dividend to Focus Trust | Advertising Mortgage Taxes Maintenance Improvements Insurance Supplies Depreciation Repairs Utilities Add ons Improvements Furniture Fixtures Dividend to Focus Trust | Normal Charitable Contributions K-1 Dividends to Beneficiary Educational expenses, Medical Insurance Medical payments,<br><br>Abnormal Life Insurance premiums |
| Assets held | Equipment | Contracts | Residence | Stocks, etc. | Property | UBIs in other Trusts |
| Depreciation | Equipment | None | Residence Furniture | None | Property | none |

Prior to the end of the calendar (tax) year, a Trust can reduce its taxable income by paying Trustee Fees (1099) or wages to employees (W-2). A Trust can also make unlimited charitable contributions with a write-off of up to 100% of the Trust income. If there is still taxable income remaining in your trust after calendar year end, a Trust has until March 5th (65 days) to make distributions to the Beneficiaries and further reduce or eliminate Trust income. Distributions are made on a Fiduciary K-1 form to one or more of the Beneficiaries. If the taxable income stays in the Trust, then it will be taxed at the Trust's tax rate which increases very rapidly. However, unlike people, a Trust is only taxed on income it actually keeps (doesn't distribute), not on net income earned.