T.C. Memo. 2003-149

UNITED STATES TAX COURT

DAVID J. EDWARDS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*

Docket No. 7010-00.                    Filed May 22, 2003.

Noel W. Spaid, for petitioner.

Dale A. Zusi, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

BEGHE, Judge:  This case has remained before the Court to

consider the amount of the penalty under section 6673(a)(1)[1]

_____

*This Supplemental Memorandum Opinion supplements Edwards
v. Commissioner, T.C. Memo. 2002-169.

[1]All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

that petitioner must pay respondent and the amount of respondent's costs under section 6673(a)(2) that petitioner's counsel, Noel W. Spaid, must pay respondent.

Background

This case was tried in 2001 over 2 days separated by more than 5 months. In Edwards v. Commissioner, T.C. Memo. 2002-169, we held petitioner had failed to report income in 1996, was not entitled to various deductions claimed for 1996 and 1997, and was liable for accuracy-related penalties under section 6662(a). We also found petitioner had unreasonably failed to pursue administrative remedies and had taken frivolous and groundless positions and would be liable for a penalty under section 6673(a)(1) in an amount to be determined; we also found Ms. Spaid had recklessly and knowingly made frivolous arguments on petitioner's behalf and that she would be required to pay, under section 6673(a)(2), respondent's excess costs, expenses, and attorney's fees. We deferred setting the penalty under section 6673(a)(1) and Ms. Spaid's liability under section 6673(a)(2) until the parties responded to our inquiries into respondent's excess costs attributable to the misconduct of petitioner and Ms. Spaid. We ordered respondent to submit an affidavit of costs, expenses, and attorney's fees that could appropriately be taken into account in determining the penalty on petitioner under section 6673(a)(1) and Ms. Spaid's liability to respondent under

section 6673(a)(2).  We also permitted petitioner and his counsel to file objections to respondent's affidavit.

As an aid to understanding our findings and discussion, we briefly recap the relevant findings in Edwards v. Commissioner, supra.

Petitioner is a medical doctor who has been practicing preventive medicine since 1961.  Petitioner also acts as a registered medical examiner for the Federal Aviation Administration.

In 1995, on the advice of Estate Preservation Services (EPS), operated by Robert L. Henkell,[2] petitioner transferred ownership of his medical practice, his movie and sound equipment, his airplane and other vehicles, his residence, and other assets to seven separate trusts.  Petitioner's revocable trust held complete ownership of the "focus trust", which held complete ownership of the remaining trusts.  Petitioner retained direct or indirect beneficial ownership of all trust assets and continued to exercise control over the trust assets after the transfers.

Although petitioner did not report any gain when he transferred his assets to the trusts, the trusts claimed

---

[2] In October 1998, at the Commissioner's behest, the U.S. District Court for the Eastern District of California issued a preliminary injunction enjoining EPS and Henkell from rendering tax shelter advice.  See United States v. Estate Pres. Servs., 38 F. Supp. 2d 846 (E.D. Cal. 1998), affd. 202 F.3d 1093 (9th Cir. 2000).

depreciation deductions on the transferred assets on the basis of their alleged fair market values at the time of transfer to the trusts, rather than on original cost or depreciated basis in petitioner's hands.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, reporting $10,613 in taxable income for 1996 and $13,380 in taxable income for 1997. These returns reported Federal income tax liabilities of $2,465 for 1996 and $4,497 for 1997. Each of the trusts filed Forms 1041, U.S. Income Tax Return for Estates and Trusts, for tax years 1996 and 1997 reporting negative taxable income.

Respondent commenced an examination of petitioner's 1996 and 1997 tax returns after July 22, 1998. In connection with the examination, respondent sent petitioner a letter requesting that he produce his records for examination. On January 21, 1999, respondent's revenue agent met petitioner and his adviser, Ilena Hamilton, at respondent's office.

Petitioner began the meeting by declaring he would not provide any information concerning the trusts because he was under some unspecified duty not to disclose trust information. Petitioner told respondent's revenue agent to obtain the trust information from the trustees. Petitioner refused to identify the trustees or to disclose how respondent could obtain the information.

Respondent's revenue agent then asked whether petitioner had brought any personal records to support his return. In response, petitioner read a lengthy prepared statement objecting that it was improper for respondent to audit more than 1 year's return at a time. He declared he would not provide any records until respondent, in writing, answered certain questions, and even then he would produce only those documents that would not "violate my fourth amendment rights which guarantee the right to privacy of one's house, papers, effects and my fifth amendment right which guaranties that one cannot be compelled to be a witness against oneself". Petitioner failed to specify how any of these privileges would apply to the financial records that formed the basis for his returns.

Petitioner demanded written answers to his questions before he would consider cooperating with respondent's examination. Petitioner demanded answers in writing to the following questions: (1) The basis for respondent's examiner's authority to conduct the examination; (2) the statutory authority for the examination; (3) "you have to show us where 7006 gets its implementing implant, excuse me, implementing authority and if that implementing authority on 7602 is all inclusive to the outside of the definition"; and (4) whether respondent could establish that petitioner had income from one of the sources identified in section 1.861-8(f), Income Tax Regs.

At the meeting, respondent's examiner displayed her badge to establish her authority to conduct the examination and cited section 7602 to establish the statutory authority for the examination. Respondent's examiner advised petitioner both at the meeting and in a letter dated February 10, 1999, that: (1) Statutes are enforceable even if there are no regulations interpreting them, and (2) section 1.861-8(f), Income Tax Regs., is irrelevant to petitioner's returns and to the examination. Petitioner did not produce his records in response to respondent's letter of February 10, 1999. Petitioner's conduct constituted refusal to cooperate with respondent's examination.

On April 24, 1999, respondent issued a formal summons for petitioner's records. On June 3, 1999, petitioner sent a letter to respondent making frivolous tax protester arguments by selectively citing portions of statutes and court decisions out of context. Petitioner signed his letter "Without prejudice UCC 10207". The letter evidences and confirms petitioner's continued refusal to cooperate with respondent's examination.

On June 12, 1999, petitioner attended a meeting with respondent's examining agents. Petitioner again failed to produce records in response to the summons and continued to make frivolous demands.

Because petitioner did not produce records to support his return positions, respondent elected to use an indirect method to

determine petitioner's tax liability.  On March 31, 2000, respondent issued a notice of deficiency to petitioner. Respondent did not send a 30-day letter before issuing the notice of deficiency.  The period of limitations for making an assessment of petitioner's 1996 tax liability would have otherwise expired on April 15, 2000.

In the notice of deficiency, respondent determined that the trusts petitioner created were shams and should be disregarded, or were grantor trusts all of whose income is taxable to petitioner.  Respondent determined that petitioner's reported gross income should be increased by the gross income reported by the trusts ($560,184 for 1996 and $495,048 for 1997) and by unexplained deposits made to petitioner's bank account ($170,619 for 1996 and $131,190 for 1997) and to one of petitioner's trust bank accounts ($2,900 for 1996).  Respondent disallowed all deductions claimed by petitioner and the trusts, because petitioner failed to provide substantiation for the deductions claimed on the returns ($574,430 for 1996 and $619,094 for 1997). Respondent made other computational adjustments to petitioner's returns resulting from the additional income respondent determined (such as determining that petitioner underreported self-employment taxes by $42,103 for 1996 and $39,443 for 1997). As a result of these adjustments, respondent determined that

petitioner had Federal income tax deficiencies of $540,192 for 1996 and $511,866 for 1997.

Respondent also determined that petitioner is liable for 20-percent accuracy-related penalties under section 6662(a) because petitioner was negligent or disregarded rules and regulations in understating his taxable income, made substantial understatements of income tax, and had not shown reasonable cause for the understatements. Applying the 20-percent rate to the deficiencies, respondent determined penalties of $108,038 for 1996 and $102,373 for 1997.

Petitioner timely filed an original petition and an amended petition with this Court. In his amended petition, petitioner argued that all adjustments respondent made were erroneous. Petitioner claimed his trusts were valid, and that the grantor trust rules do not apply because he held neither legal nor equitable title to the trust assets. Petitioner in his amended petition also asserted the "Delpit" issue: that the Tax Court lacks jurisdiction over his petition because respondent made the determination without sending him a 30-day letter, without advising him of his administrative rights, and without giving him an opportunity for adequate administrative review. According to petitioner's counsel: "This denial has cost Petitioner undue burden of Tax Court litigation that could have been resolved administratively."

The trial of this case occurred over 2 days, separated by more than 5 months.  The delay in completing the trial was caused in large part by the failure of petitioner's counsel to organize the exhibits she wished to include in the second of three stipulations of fact.  The first and third stipulations of fact, prepared primarily by respondent, were filed with the Court at the beginning of the first day of trial; the second stipulation of fact was prepared by Ms. Spaid with substantial assistance from respondent's trial counsel, Dale A. Zusi, which was required by Ms. Spaid's disorganization.  The second stipulation of fact was subject to respondent's numerous objections to many exhibits on relevance, hearsay, authentication, or lack of foundation grounds and was filed almost 4 months after the first day of trial.

Before trial, in petitioner's trial memorandum, and during the first day of trial, Ms. Spaid made two additional claims on petitioner's behalf:  That the statutory notice of deficiency was invalid because the wholesale disallowance of deductions amounted to a lack of determination, the "Scar" issue; and that the Internal Revenue Service is not an agency of the U.S. Government, the "Agency" issue.

At the beginning of the second day of trial, petitioner, through Ms. Spaid, made two oral motions:  (1) To shift the burden of proof to respondent under section 7491(a), claiming

that petitioner had cooperated at all levels; and (2) for imposition of a penalty on respondent under section 6673(a)(1), on the ground that respondent, by not offering petitioner an Appeals Office conference before issuing the statutory notice, had deprived petitioner of administrative remedies.

During both trial days, petitioner continued to claim that the trusts were valid for Federal income tax purposes. The first day of trial dealt primarily with the validity of the trusts and events occurring during the audit. These subjects were also covered during the second day of trial in the cross-examination of the revenue agent who had examined petitioner's returns and in the direct testimony of petitioner. The second day of trial also covered petitioner's attempts to prove additional deductions using amended returns for petitioner and the trusts.

More than 3 months after the second day of trial, and shortly before posttrial briefs were originally due, respondent and petitioner entered into a superseding stipulation of settled issues that resolved many of the issues previously in dispute between the parties. The parties stipulated that the trusts were invalid for Federal income tax purposes, and that all the trust income and deductions would be allocated to petitioner. In addition, both petitioner and respondent made substantial concessions regarding the deficiencies, including deductions

and cost of goods sold claimed on Schedule C, Profit or Loss From Business.

The parties also stipulated that petitioner failed to report income of $62,061 in 1997, and that petitioner is entitled to deductions on Schedule A, Itemized Deductions, of $21,929 for 1996 and $21,061 for 1997, subject to any statutory limitations based on petitioner's adjusted gross income. The parties stipulated that petitioner is subject to self-employment tax and is entitled to a deduction for one-half of the self-employment tax and that the exemption and taxability of petitioner's Social Security receipts are computational and depend on petitioner's adjusted gross income.

Finally, the parties agreed that the only issues remaining in dispute were petitioner's failure to report $170,619 of income in 1996;[3] petitioner's right to Schedule C deductions and cost of goods sold in 1996, airplane expenses, and a home office deduction; and accuracy-related penalties under section 6662(a). In addition to those five issues, respondent requested in his posttrial brief that we impose penalties against petitioner under section 6673(a)(1). Petitioner objected to the imposition of section 6673(a)(1) penalties, contending that his arguments were

_____

[3]On brief, respondent conceded that petitioner's unreported income for 1996 was $54,516, rather than $170,619; our opinion sustained respondent's concession to this effect, as well as respondent's other adjustments that remained in issue.

correct and requesting that we specifically address the "Delpit", "Scar", and "Agency" issues.

In our opinion in Edwards v. Commissioner, T.C. Memo. 2002-169, we addressed the "Delpit", "Scar", and "Agency" issues, demonstrating the frivolity of petitioner's arguments on these issues.  We need not repeat the exercise here.  We also concluded that petitioner was not entitled to rely on the misrepresentations of the promoter whose abusive trust package petitioner had purchased.  We suggested, however, that petitioner had somewhat redeemed himself by conceding the abusive trust issue before the parties' briefs were due and that we would take petitioner's belated concession into account in determining sanctions under section 6673(a).

In our opinion in Edwards, we found many of the positions taken by petitioner when he instituted this proceeding, and maintained throughout this proceeding, were frivolous and groundless, and that petitioner unreasonably failed to pursue administrative remedies.  Accordingly, we agreed with respondent that petitioner should be penalized under section 6673(a)(1).

We also opined that Ms. Spaid would be liable under section 6673(a)(2) for respondent's costs, expenses, and attorney's fees incurred because of the frivolous arguments she had advanced.  In so holding, we found that Ms. Spaid had knowingly and recklessly made frivolous arguments in pretrial memoranda, at trial, and in

posttrial briefs.  The consequence of Ms. Spaid's knowing and reckless behavior was to multiply the proceedings unreasonably and vexatiously.  We found that Ms. Spaid had continued to advance the "Delpit", "Scar", and "Agency" issues long after we warned her they were frivolous.

We recognized that petitioner originally appeared in this case by filing his petition pro se, and that some of the frivolous arguments were originally contained in the petition. In this regard, we observed that Ms. Spaid was liable only for the consequences of her own misconduct, including advancing frivolous arguments initially developed by petitioner, but not for actions taken by petitioner before Ms. Spaid's appearance. Respondent was ordered to submit an affidavit of the excess costs, expenses, and attorney's fees incurred as a result of Ms. Spaid's unreasonable and vexatious multiplication of the proceedings.

Respondent's trial attorney, Ms. Zusi, filed the affidavit as ordered.  Ms. Zusi reviewed respondent's internal timekeeping records, the legal files associated with the case, and the various letters and motions pertaining to the case.  These documents show that Ms. Zusi and her supervisor, Debra K. Moe, spent 495.5 hours and 67.5 hours, respectively, working on the case.  Ms. Zusi estimated that, out of these totals, she and Ms. Moe spent 167 and 34 hours, respectively, on frivolous issues

raised or maintained by Ms. Spaid that vexatiously multiplied the proceedings. On the basis of Ms. Zusi's and Ms. Moe's years of experience and the location of their office, respondent requested a rate of $200 per hour for Ms. Zusi and Ms. Moe. Applying this multiplier, respondent requested a total of $40,200 in attorney's fees.

Ms. Spaid filed an "Opposition to Affidavit in Support of Attorney's Fees for Sanctions". Ms. Spaid's submission objects to the imposition of section 6673(a)(2) costs against her but does not object to the imposition of a penalty against petitioner under section 6673(a)(1). Ms. Spaid contends the "Agency", "Delpit", and "Scar" issues were appropriate lines of inquiry. With respect to the abusive trust issue, Ms. Spaid contends the abusive trusts are not a sanctionable area. Ms. Spaid also takes issue with respondent's itemization of time spent on each particular frivolous issue. Although Ms. Spaid did not file a motion for reconsideration, the objection concludes with a request for the Court to reconsider our position with respect to section 6673(a)(2).

Petitioner filed an "Affidavit in Appellant's Response to Sanctioned Pursual" (sic). Petitioner's submission repeats many of the arguments we found to be frivolous in our opinion in Edwards v. Commissioner, supra, and also repeats Ms. Spaid's prior request that the Court impose sanctions on respondent.

Discussion

### Section 6673(a)(1) Liability of Petitioner

Section 6673(a)(1) allows the Tax Court to impose a penalty of up to $25,000, payable to the United States, when (A) a taxpayer institutes or maintains a proceeding in the Tax Court primarily for delay, (B) the taxpayer's position in the proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies.

In the case at hand, we hold that petitioner is subject to a penalty under section 6673(a)(1) because he has taken frivolous and groundless positions and unreasonably failed to pursue available administrative remedies. Many of the positions petitioner maintained throughout the Court proceedings were frivolous or groundless. Petitioner's "Delpit", "Scar", and "Agency" arguments were entirely without merit. Petitioner's insistence, during most of the case, on the validity of the trusts in the face of overwhelming contrary legal authority was unjustified. At the administrative level, petitioner's failure to pursue available administrative remedies was unreasonable: Petitioner refused to provide trust information to respondent's examiner, refused to produce records to support his return, demanded written answers to irrelevant questions before he would consider cooperating with respondent, made frivolous arguments in response to a formal summons and failed to produce the records

requested in the summons, and then cried foul when respondent did not issue a 30-day letter, claiming he was not afforded an opportunity for administrative review by respondent's Appeals Office.

In response to respondent's affidavit, petitioner filed an "Affidavit in Appellant's Response to Sanctioned Pursual". As if to put himself in the worst possible light, petitioner chose to respond to respondent's affidavit of attorney's fees by advancing, to the extent the submission is coherent, the same frivolous arguments we described as tax protester arguments justifying imposition of sanctions under section 6673(a)(1). We will not address these frivolous arguments again.

In our opinion in Edwards v. Commissioner, T.C. Memo. 2002-169, we suggested that petitioner's belated attempts to cooperate with respondent at trial and posttrial by entering into a partial stipulation of settled issues finally conceding the abusive trust issue were mitigating factors that would be taken into account in imposing a penalty. However, the penalty must be substantial for it to have a deterrent effect. Takaba v. Commissioner, 119 T.C. 285, 295 (2002) (citing Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)). The purpose of section 6673(a)(1) is to compel taxpayers who litigate in our Court to conform their conduct to well-settled rules. Id. In setting the penalty, we have considered respondent's affidavit of attorney's fees, discussed

below, in which respondent sets forth the considerable resources expended in the case at hand. Additionally, we have taken into account petitioner's conduct throughout the administrative proceedings, in which petitioner was uncooperative and unreasonable. Petitioner's "Affidavit in Appellant's Response to Sanctioned Pursual", in which petitioner again succumbed to the temptation to make frivolous arguments, confirms the necessity of a substantial penalty. Therefore, on the basis of petitioner's misconduct in the administrative and Court proceedings, we shall impose a penalty of $24,000 under section 6673(a)(1).

Section 6673(a)(2) Liability of Ms. Spaid

Section 6673(a)(2) authorizes the Court to impose costs on an attorney who has unreasonably and vexatiously multiplied the proceedings. Section 6673(a)(2) is modeled after section 1927 of the Judicial Code, 28 U.S.C. sec. 1927 (2000), and the Court has relied on cases arising under 28 U.S.C. section 1927 to ascertain the level of misconduct justifying sanctions under section 6673(a)(2). See Takaba v. Commissioner, supra; Harper v. Commissioner, 99 T.C. 533, 545 (1992).

In Takaba v. Commissioner, supra, we recently observed that the venue for appeal of sanctions under section 6673(a)(2) may be the Court of Appeals for the District of Columbia Circuit. See id. at 297 (citing section 7482(b)(1)). We found that the Court of Appeals for the District of Columbia Circuit had adopted a

standard of recklessness for imposing sanctions under 28 U.S.C. section 1927.  Id. (citing Reliance Ins. Co. v. Sweeney Corp., 792 F.2d 1137, 1138 (D.C. Cir. 1986)).  We observed that if the venue for appeal was not the Court of Appeals for the District of Columbia Circuit, it would likely be the Court of Appeals for the Ninth Circuit.  Id.  The Court of Appeals for the Ninth Circuit had applied a bad faith standard in cases arising under 28 U.S.C. section 1927.  Id.  Since the taxpayer's counsel's conduct amounted to bad faith as defined by the Court of Appeals for the Ninth Circuit, a higher standard than recklessness, and we were uncertain of appropriate venue, we applied a bad faith standard for purposes of that case.  See id.

In our opinion in Edwards v. Commissioner, supra, we observed that in the view of the Court of Appeals for the Ninth Circuit, bad faith is present when an attorney knowingly or recklessly raises a frivolous argument.  Id. (citing In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996)).  We found that Ms. Spaid knowingly and recklessly made frivolous arguments in pretrial memoranda, at trial, and in posttrial briefs.  In making these arguments, Ms. Spaid cited no relevant supporting authority, and she either failed to perform the basic research to discover or failed to disclose the substantial bodies of authority specifically rejecting her arguments as frivolous. Accordingly, we found the standard for bad faith used by the

Court of Appeals for the Ninth Circuit had been satisfied.  We observe that Ms. Spaid's conduct also satisfies the recklessness standard for imposing sanctions under 28 U.S.C. section 1927 in the Court of Appeals for the District of Columbia.  See Takaba v. Commissioner, supra at 297.

"Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate.  The product is known as the 'lodestar' amount."  Harper v. Commissioner, supra at 549.  Pursuant to the Court's order, respondent's attorney of record, Ms. Zusi, submitted an affidavit setting forth the costs incurred by respondent as a result of the sanctionable behavior of Ms. Spaid.  The affidavit contains a detailed itemization of the time Ms. Zusi and Ms. Moe spent on each instance of misconduct.  Attached to the affidavit is a copy of respondent's records of time spent by Ms. Zusi and Ms. Moe.

Respondent requests reimbursement for 167 hours of Ms. Zusi's time at $200 an hour.  Ms. Zusi is the abusive trust coordinating attorney for the San Jose, California, area counsel's Small Business/Self-Employed Division of the Office of Chief Counsel.  She has been practicing law for 17 years, 14 of which have been with respondent.  Ms. Zusi detailed the time she spent on the case, beginning with Ms. Spaid's entry of appearance on December 1, 2000, which included legal research, trial

preparation, appearing at the calendar call and trial as counsel, and preparing both respondent's opening and reply briefs.

Respondent also asks for reimbursement of 34 hours of Ms. Moe's time at $200 an hour. Ms. Moe is an associate area counsel in respondent's San Jose, California, Office of Chief Counsel and is Ms. Zusi's supervisor. Ms. Moe has been with the Office of Chief Counsel since 1984. The total attorney's fees requested by respondent for Ms. Zusi and Ms. Moe amount to $40,200.

On October 24, 2002, Ms. Spaid filed an "Opposition to Affidavit in Support of Attorney's Fees for Sanctions". Ms. Spaid's submission objects to the imposition of section 6673(a)(2) costs against her but does not object to imposition of the section 6673(a)(1) penalty against petitioner. Ms. Spaid contends the "Agency", "Delpit", and "Scar" issues were appropriate lines of inquiry. With respect to the "Delpit" issue, Ms. Spaid's objection declares she "felt it was time for the court to look at the purpose of the administrative procedures * * * thus changing the law in favor of the taxpayer." The objection states that the "Agency" issue was raised only in "paperwork" and was never responded to by respondent. The objection says that the "Scar" issue was raised because the notice of deficiency had not allowed any deductions for petitioner and that seemed "unfair on the face of it". With respect to the abusive trust issue, Ms. Spaid claims the abusive

trust issue is not a sanctionable area.  Ms. Spaid also takes issue with respondent's itemization of time spent on each particular frivolous issue.  She concludes with a request that we reconsider our declared intention to impose sanctions under section 6673(a)(2).

We will not reconsider our position under section 6673(a)(2).  The "Delpit", "Scar", and "Agency" arguments have been rejected by this and other courts as frivolous.  See Edwards v. Commissioner, T.C. Memo. 2002-169.  Ms. Spaid, contrary to her assertions, did not advance any good-faith arguments for changes in existing law.  Instead, she cobbled together a few out-of-context quotes from cases that do not stand for the propositions for which she cites them, and she never acknowledged the existence of the substantial bodies of law contrary to her frivolous positions.

Ms. Spaid's assertion that the abusive trust issue is not a "sanctionable area" again illustrates her penchant for practicing law without reading cases.  In our opinion in Edwards, we stated clearly that the abusive trust issue was a frivolous issue and observed that respondent had provided petitioner with copious citations of our prior cases holding trusts like his to be invalid abusive trusts.  Notwithstanding the parties settled the abusive trust issue in respondent's favor, that happened only shortly before posttrial briefs were originally due; Ms. Spaid is

responsible for respondent's costs reasonably incurred as a result of having to prepare to defend against all her frivolous arguments. However, we will not include any of the time spent by respondent in considering Ms. Spaid's frivolous arguments in preparing respondent's posttrial briefs, which properly made no more than a passing reference to the lack of content of those arguments. The time spent appears excessive and did not result in any legal work product that was helpful to the Court.

In our opinion in Edwards v. Commissioner, supra, we decided we would award respondent costs under section 6673(a)(2) for Ms. Spaid's knowing and reckless advocacy of frivolous issues. In addition to her sanctionable conduct, Ms. Spaid exhibited a large measure of disorganization and negligence in performing routine litigation matters. We will not award respondent's costs for the time spent by Ms. Zusi and Ms. Moe that was directly attributable to responding to Ms. Spaid's disorganization and negligence. We will reduce the fees requested by respondent to an amount that we estimate is more commensurate with the time spent by Ms. Zusi and Ms. Moe in responding to the frivolous arguments without regard to the disorganized and negligent fashion in which Ms. Spaid prepared for trial, including the time spent on discovery and preparation of the second stipulation of facts, which was primarily designed to provide support for Ms. Spaid's frivolous arguments. After considering respondent's affidavit and Ms.

Spaid's response, we will order Ms. Spaid to reimburse respondent for 54 hours of Ms. Zusi's time and 11.25 of Ms. Moe's time. See appendix.

We find that the $200 hourly rate requested by respondent is reasonable. See Nis Family Trust v. Commissioner, 115 T.C. 523, 552 (2000) (holding that $200 an hour was a reasonable rate for both Ms. Zusi and Ms. Moe). Accordingly, the lodestar amount is $10,800 for Ms. Zusi's time and $2,250 for Ms. Moe's time. Respondent has not itemized costs for travel expenses, photocopying, or supplies used in preparing the case, nor for the time spent in preparing respondent's affidavit. Respondent limits his request for costs to the lodestar amount. We shall require Ms. Spaid to pay $13,050 in respondent's excess costs reflecting the total lodestar amount.

Conclusion

In the case at hand, petitioner took frivolous and groundless positions and unreasonably failed to pursue available administrative remedies. We believe $24,000 is a substantial but appropriate penalty for petitioner to pay the United States under section 6673(a)(1). Therefore, the decision to be entered against petitioner, in addition to determining the deficiencies and section 6662(a) accuracy-related penalties, will require petitioner to pay a penalty of $24,000 to the United States pursuant to section 6673(a)(1).

Ms. Spaid persisted in making frivolous arguments after being repeatedly warned by respondent and the Court that those arguments were frivolous.  We find that $13,050 is a reasonable amount for respondent's excess attorney's fees in preparing for and responding to those arguments.  Therefore, we shall order Ms. Spaid personally to pay respondent $13,050 pursuant to section 6673(a)(2).  Issuance of the Court's order in this regard will be postponed pending entry of the Court's decision under Rule 155.

To reflect the foregoing,

<u>An appropriate order will be issued, and an order and decision will be entered under Rule 155.</u>

APPENDIX

On January 5, 2001, Ms. Zusi spent 2 hours reviewing an informal discovery request from Ms. Spaid.  Of the 33 items requested, 18 were already in Ms. Spaid's possession, 11 were related to frivolous arguments, 3 were related to the trusts, and 1 was incomprehensible.  We order Ms. Spaid to reimburse respondent for 1 hour of Ms. Zusi's time, the amount we estimate was the result of Ms. Spaid's knowing and reckless advocacy of frivolous issues.

On January 10, 2001, Ms. Zusi spent 3.5 hours preparing for a conference with Ms. Spaid and petitioner.  Ms. Zusi had received documents indicating Ms. Spaid would be asserting frivolous issues relating to the abusive trusts and prepared information packets for Ms. Spaid and petitioner.  Ms. Zusi also had to respond to Ms. Spaid's motion for continuance.  Ms. Spaid admitted she filed the motion because she had missed the discovery deadline.  Since the motion for continuance was the result of Ms. Spaid's negligence, we reduce the number of reimbursable hours by 1 hour.  We order Ms. Spaid to reimburse respondent for 2.5 hours of Ms. Zusi's time.

On January 11, Ms. Zusi and Ms. Moe met petitioner, Ms. Spaid, and some of petitioner's "witnesses".  During the meeting, the parties held a conference call with the Court in which Ms. Spaid raised the "Delpit" and "Scar" issues, and the Court warned

Ms. Spaid that these issues were frivolous. Ms. Zusi spent 3.5 hours dealing with frivolous issues, and Ms. Moe spent .75 hours dealing with frivolous issues. We order Ms. Spaid to reimburse respondent for 3.5 hours of Ms. Zusi's time and .75 hour of Ms. Moe's time.

On January 17 and 19, 2001, Ms. Zusi spent 8 hours preparing and mailing her response to Ms. Spaid's informal discovery request. Since, as we have stated, approximately one-half the items in Ms. Spaid's informal discovery request were requested because of Ms. Spaid's negligence, we order Ms. Spaid to reimburse respondent for 4 hours of Ms. Zusi's time.

On January 24, 2001, Ms. Zusi spent 3 hours on the "Delpit", "Scar", and "Agency" issues. Ms. Zusi also shepardized a case dealing with abusive trusts that Ms. Spaid claimed had been overruled. We give Ms. Spaid the benefit of the doubt and characterize her failure to verify the accuracy of her assertion as negligence. We order Ms. Spaid to reimburse respondent for 2.5 hours of Ms. Zusi's time.

On February 9, 2001, Ms. Zusi and Ms. Moe spent 3 and 0.5 hours, respectively, responding to and reviewing Ms. Spaid's supplement to her motion to continue. The motion to continue was filed because Ms. Spaid missed the discovery deadline and is thus

the product of Ms. Spaid's negligence.  We do not require Ms. Spaid to reimburse respondent for the time spent on the supplement to the motion to continue.

On February 12, 2001, Ms. Spaid faxed respondent copies of proposed exhibits.  Ms. Zusi spent approximately 3 hours reviewing documents relating to frivolous issues.  Ms. Moe spent 1 hour discussing the documents with Ms. Zusi.  We order Ms. Spaid to reimburse respondent for 3 hours of Ms. Zusi's time and none of Ms. Moe's time because we believe any time Ms. Moe spent on the frivolous issues was negligible.

On February 13-15, 2001, Ms. Zusi spent 6 hours preparing respondent's trial memorandum.  Two of the six hours were related to frivolous issues.  Ms. Moe spent 2 hours reviewing the trial memorandum.  We order Ms. Spaid to reimburse respondent for 2 hours of Ms. Zusi's time and none of Ms. Moe's time because we believe any time Ms. Moe spent on the frivolous issues was negligible.

On February 28, 2001, Ms. Zusi and Ms. Moe prepared for and participated in a conference call with Ms. Spaid and the Court in which Ms. Spaid raised frivolous issues.  Ms. Zusi spent approximately 1.5 hours and Ms. Moe spent approximately 0.5 hours dealing with the frivolous issues.  We order Ms. Spaid to reimburse respondent for 1.5 hours of Ms. Zusi's time and 0.5 hour of Ms. Moe's time.

On March 14, 2001, Ms. Spaid faxed respondent 140 pages of additional proposed exhibits to be incorporated into the second stipulation of facts.  All the documents related to frivolous issues.  Ms. Zusi spent 10 hours reviewing the documents and preparing her objections.  We order Ms. Spaid to reimburse respondent for 10 hours of Ms. Zusi's time.

On March 15, 2001, Ms. Zusi and Ms. Moe participated in a conference call with the Court and Ms. Spaid regarding the second stipulation of facts.  Ms. Spaid faxed the proposed second stipulation of facts to Ms. Zusi.  Upon Ms. Zusi's review, she noted that none of her objections were shown on the proposed stipulation.  Ms. Zusi spent 10 hours reviewing and revising the proposed second stipulation of facts.  Ms. Moe spent .5 hour reviewing Ms. Zusi's revisions.  While the entire second stipulation of facts is frivolous, we believe that the lack of objections and other organizational defects that Ms. Zusi corrected were due to Ms. Spaid's negligence.  We therefore order Ms. Spaid to reimburse respondent for 5 hours of Ms. Zusi's time.  We do not order Ms. Spaid to reimburse any of Ms. Moe's time because we believe any time she spent on the frivolous issues was negligible.

March 16, 2001, was the first day of trial; both Ms. Zusi and Ms. Moe represented respondent.  Approximately 5 of the 10 hours of the first day of trial were spent dealing with frivolous

issues.  We order Ms. Spaid to reimburse respondent for 5 hours of Ms. Zusi's time and 5 hours of Ms. Moe's time.

On March 26, 2001, Ms. Spaid faxed Ms. Zusi copies of various documents purporting to substantiate the validity of the trusts.  Ms. Zusi spent 2 hours on March 30 and April 6, 2001, reviewing documents relating to frivolous issues and preparing to rebut them.  We order Ms. Spaid to reimburse respondent for 2 hours of Ms. Zusi's time.

On June 20, 2001, Ms. Zusi and Ms. Moe participated in a conference call with Ms. Spaid and the Court.  The Court expressed its displeasure with the format of the second stipulation of facts prepared by Ms. Spaid.  Pursuant to the Court's request, respondent's counsel recompiled the second stipulation of facts.  Ms. Zusi and Ms. Moe spent 5 and 4 hours, respectively, recompiling the second stipulation of facts.

We do not believe it is unreasonable for respondent to request to be reimbursed for attorney's fees for recompiling the second stipulation of facts, which dealt entirely with frivolous issues.  However, we believe that respondent incurred the attorney's fees relating to the recompilation of the second stipulation of facts as a result of Ms. Spaid's negligent lack of organization and do not order Ms. Spaid to pay respondent's attorney's fees.

On June 21, 2001, Ms. Zusi and Ms. Moe participated in a conference call with Ms. Spaid and the Court. The purpose of the conference call was to admonish Ms. Spaid that evidence of deductions needed to be included in the record and explain to Ms. Spaid that a gratuitous transfer of assets to a trust does not result in a stepped-up basis for the assets. Respondent requests reimbursement for 4.5 hours of Ms. Zusi's time and 1 hour of Ms. Moe's time. We do not order Ms. Spaid to reimburse respondent for any of the time Ms. Zusi and Ms. Moe spent preparing for and participating in the conference call because the call dealt almost entirely with issues that arose because of Ms. Spaid's negligence.

From July 2 to 6, 2001, Ms. Zusi spent 25.5 hours revising the second stipulation of facts and preparing the accompanying exhibits. Ms. Zusi's affidavit states: "This time would not have been necessary if Ms. Spaid had complied with the Court's directives and with the Tax Court Rules". We believe the time Ms. Zusi spent revising the second stipulation of facts was caused by Ms. Spaid's negligence, not her knowing and reckless conduct. Accordingly, we do not order Ms. Spaid to reimburse respondent for any of the time Ms. Zusi spent revising the second stipulation of facts.

On July 17, 2001, Ms. Zusi and Ms. Moe spent 2 hours each preparing for and participating in a conference call with Ms.

Spaid and the Court. The conference call dealt solely with frivolous issues raised by Ms. Spaid. We order Ms. Spaid to reimburse respondent for 2 hours of Ms. Zusi's time. We do not order Ms. Spaid to reimburse respondent for Ms. Moe's time.

On August 1, 2001, Ms. Zusi and Ms. Moe participated in a conference call with the Court and Ms. Spaid. The conference call concerned the second stipulation of facts and the accompanying exhibits. Respondent requests reimbursement for 4 hours of Ms. Zusi's time and 2 hours of Ms. Moe's time. We do not order Ms. Spaid to reimburse respondent for any of the time spent by Ms. Zusi and Ms. Moe preparing for and participating in the conference call because it was required by Ms. Spaid's negligence.

On August 16, 2001, Ms. Spaid faxed Ms. Zusi a warning that Ms. Spaid would move for sanctions against the IRS under section 6673(a)(1), which does not provide for sanctions against the IRS. Ms. Zusi spent 5 hours researching and preparing a defense to the threatened sanctions. We order Ms. Spaid to reimburse respondent for 5 hours of Ms. Zusi's time.

On August 21, 2001, the trial was concluded. Approximately 5 hours of the trial were devoted to frivolous issues, including the sham trusts and the "Delpit" and "Scar" issues. Ms. Zusi and Ms. Moe both appeared on behalf of respondent. We order Ms.

Spaid to reimburse respondent for 5 hours of Ms. Zusi's time and 5 hours of Ms. Moe's time.

On August 23 through November 9, 2001, November 13-28, 2001, and January 18-29, 2002, Ms. Zusi prepared respondent's original posttrial brief and reply brief, which were reviewed by Ms. Moe. Ms. Zusi alleges she spent 62 hours on frivolous issues, and that Ms. Moe spent 5.75 hours reviewing and conferring with Ms. Zusi on the frivolous issues. We do not order Ms. Spaid to reimburse respondent for any of the time spent by Ms. Zusi and Ms. Moe in preparing respondent's posttrial and reply briefs. By this time, the "Delpit", "Scar", and "Agency" arguments had clearly been established as frivolous, petitioner had conceded the sham trust issue, respondent's briefs make only a passing reference to the frivolous arguments, and, in any event, the time alleged to have been spent on the frivolous arguments appears to be excessive.